**Lance GRAVES, Appellant,**

v.

**WOMEN'S PROFESSIONAL RODEO ASSOCIATION, INC., Appellee.**

**No. 89–1605.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1990.

Decided June 29, 1990.

Debra Armstrong–Wright, Fort Smith, Ark., for appellant.

Richard L. Spearman, Fort Smith, Ark., for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and HUNTER,* District Judge.

BOWMAN, Circuit Judge.

Lance Graves has brought suit against the Women's Professional Rodeo Association (WPRA) for denying him membership on the basis of his gender in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–2(a) (1982) and article II sections 2 and 3 of the Arkansas Constitution.[1] The District Court[2] granted WPRA's motion for summary judgment based on its findings that Graves does not have an employment relationship with WPRA and that WPRA is not an employer for purposes of Title VII and on the court's resultant lack of jurisdiction over the claim based on the Arkansas Constitution. Graves appeals, and we affirm.

---

* The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. Graves also mentions 42 U.S.C. § 1985 (1982) as grounds for his claim but no argument is presented on this claim beyond its appearance in his initial statement of the case. We agree with the District Court, before which the § 1985

claim was also asserted but not argued, that that statute is completely inapposite to Graves' situation in any event. *See* Memorandum Opinion, 708 F.Supp. 233, 238.

2. The Honorable H. Franklin Waters, Chief Judge, United States District Court for the Western District of Arkansas.

WPRA is a nonprofit corporation organized for the principal purpose of sanctioning rodeo barrel races. As its name as well as this litigation suggests, membership in WPRA is limited to females. WPRA does not itself organize any rodeos; rather, the rodeos are staged by local organizing committees—albeit in compliance with various WPRA regulations if the rodeo is to merit WPRA's seal of approval. Nor does WPRA supervise the training of its members or the logistics of their participation in a rodeo but they, too, are governed by certain rules. Thus, it is the member's decision whether to compete in a particular rodeo as well as her burden to train for it and transport her horse and equipment to the event. Once entered, however, she is obligated to abide by WPRA rules that, for example, prohibit promotional or unkempt clothing, require participation in the absence of a valid excuse, and demand that an honest effort be made in the competition. While female nonmembers may participate in WPRA-sanctioned events, members generally are not allowed to compete in rodeos that are not endorsed by WPRA.

Although WPRA does not pay its members directly or indirectly, there are certain benefits to membership. WPRA will advance rodeo entry fees for members who have submitted their names but not their checks by the deadline. Of somewhat more significance, at least to this suit, the WPRA member who wins the most prize money from barrel racing each year is "recognized throughout the rodeo industry as the World Champion Barrel Racer for that year." Appellant's Brief at 5. The homologue world champions in all other rodeo events come from the ranks of the Professional Rodeo Cowboy Association (PRCA)—which admits both men and women as members. But PRCA does not sponsor barrel racing events, and therein lies the rub: Graves has devoted much of his life to barrel racing; he wants to barrel race professionally. Thus, he argues that WPRA has violated Title VII by excluding him from membership on the basis of his gender.

WPRA's defense has consisted of pointing out that it does not have the requisite fifteen employees to come within the ambit of Title VII's mandate, nor, in fact, is it Graves's desire to be one of the two full-time or two part-time employees that WPRA does have. Graves concedes that, if these four employees constitute WPRA's entire work force then WPRA is not an "employer" under Title VII and WPRA may exclude him on the basis of his gender. He argues, however, that WPRA's members are its employees. The sole issue on appeal then is whether the membership roster of WPRA can be construed as a list of its employees.

In relevant part, Title VII defines "employee" as "an individual employed by an employer" and "employer" as "a person . . . who has fifteen or more employees . . . and any agent of such a person." 42 U.S.C. § 2000e(b) and (f) (1982). Due to the occasional difficulty of applying such circular definitions to irregular employment relationships, courts have fashioned analyses of their own for determining whether an employment relationship exists. Graves's argument that WPRA members merit description as employees relies primarily on his interpretations of this case law.

The District Court responded to Graves's contentions by first noting that WPRA is a voluntary organization that does not pay wages, withhold taxes, or pay insurance. While acknowledging that the organization exercises a modicum of control over its members via WPRA rules—control being one factor that has been considered by the courts to be relevant to a determination of an employment relationship—the court correctly stated that the existence of a degree of control is not the sole criterion. Because the relationship between WPRA and its members permits only of an opportunity to compete for prize money furnished by sponsors, the court found that members of WPRA are not in an employment relationship with that organization.

We find no flaw in the District Court's analysis and may affirm because we, too, find that the relationship between WPRA and its members categorically resists classification as "employment" according to

the ordinary usage of that term. As noted above, the statutory definitions fail to set out any meaning for "employer" and "employee" distinct from those implied by ordinary usage—indeed the quite spartan and circular nature of the definitions seem to leave no other route. And if that were not sufficient, the legislative history explicitly provides that the dictionary definition should govern the interpretation of "employer" under Title VII. 110 Cong.Rec. 7216 (1964) (response of the subcommittee to Sen. Dirksen's memorandum); *cf. Blassie v. Kroger Co.*, 345 F.2d 58, 68–69 (8th Cir.1965) (Blackmun, J.) (relying on dictionary definition of "employee" in interpreting the National Labor Management Relations Act).

The dictionary gives these definitions:

**em-ploy-ee** or **em-ploye** ... one employed by another usu. in a position below the executive level and usu. for wages

**em-ploy-er** ... one that employs something or somebody: as **a** (1): the owner of an enterprise (as a business or manufacturing firm) that employs personnel for wages or salaries (2) : such an enterprise itself **b**: an agent acting for such an enterprise in employing persons

**em-ploy** ... to provide with a job that pays wages or a salary or with a means of earning a living <he is —ed by a local plumbing concern>

*Webster's Third New International Dictionary* 743 (unabridged) (1981). Central to the meaning of these words is the idea of compensation in exchange for services: an employer is someone who pays, directly or indirectly, wages or a salary or other compensation to the person who provides services—that person being the employee. Compensation by the putative employer to the putative employee in exchange for his services is not a sufficient condition, but it is an essential condition to the existence of an employer-employee relationship.

Members of WPRA receive no compensation from WPRA or from any other source by reason of being members of WPRA. The few winners in WPRA-approved rodeos win a purse comprised of money put up by the sponsor of that particular rodeo in addition to the entry fees, minus administrative expenses. None of the prize money comes from WPRA. Moreover, although only women may enter, the winners need not be members of WPRA at all. Indeed, it is the members who must pay dues to WPRA and even those who win some competitions may very well end up with a net loss at the year's end after deducting their overall expenses from their winnings. For most members, belonging to WPRA and competing on the professional rodeo circuit is not a remunerative proposition. The relationship between WPRA and its members simply bears no resemblance to that between an employer and employee within the accepted usage of those terms: no compensation is made, only prize money won— and that is not supplied by the alleged employer nor does the recipient necessarily come from the postulated class of employees. In addition, membership in WPRA entails no duty of service to WPRA or anyone else, a fact that further distances the WPRA-member relationship from any resemblance to an employment relationship.

Only by skipping this crucial and elementary initial inquiry—whether there exists an employment relationship, according to the ordinary meaning of the words—and jumping straight into verbal manipulation of the case law tests for an employment relationship, can Graves make an implausible argument sound even marginally plausible. Citing the "right to control" test, Graves points out that WPRA does exercise some degree of control over its members through its various rules and regulations. But in the same manner, a university exercises control over its students—and application deadlines and other requirements constitute "control" over merely potential students. Similarly, American Express sets rules for its cardmembers as well as for participating vendors, but neither of these are its employees.

Graves has a far more difficult time making an even colorable argument regarding most of the other factors courts have found relevant to discerning an employment rela-

tionship. It is unnecessary for us to consider any of these. Courts have turned to analyses such as the "economic realities" test and "right to control" test under Title VII only in situations that plausibly approximate an employment relationship. In the case at hand, WPRA is so unlike an employer to its members that plunging into questions of control or economic realities is on the order of considering whether mitigating circumstances were present during the commission of a crime before determining whether there is a corpus delicti. Because the absence of any compensation flowing to WPRA members by reason of their membership, together with the absence of any duty of service owed by members to WPRA or anyone else, suffices to exclude WPRA from being an "employer" of its members under Title VII, Graves's claim may be denied without probing the analyses used to deal with relationships that make it past this first cut.

The ineluctable consequence of our finding that WPRA is not the employer of its members is that it has fewer than fifteen employees, and consequently is not covered by Title VII. There thus being no federal claim, the District Court correctly concluded that it was without jurisdiction to hear Graves's claims under the Arkansas Constitution. WPRA may remain an all-female organization.[3]

The judgment of the District Court is affirmed.

---

**3.** Although WPRA raised no defense beyond its failure to qualify as an "employer" under Title VII, we note that under the bona fide occupational qualification (BFOQ) exception the organization probably would not have to admit males even if it had the requisite fifteen employees. The legislative history offers as an example of legitimate discrimination under the BFOQ exception to the proscriptions of Title VII "a professional baseball team for male players."

110 Cong.Rec. 7213 (1964). Presumably, being female would similarly constitute a BFOQ for competing in women's professional rodeo, in the same way that being female would constitute a BFOQ for competing in women's professional tennis or for membership in the Ladies' Professional Golf Association. In short, we do not believe that Title VII mandates the admission of men as competitors in women's professional sports.