## WALTERS *v.* METROPOLITAN EDUCATIONAL ENTERPRISES, INC., ET AL.

No. 95–259.   Argued November 6, 1996—Decided January 14, 1997*

---

*Together with No. 95–779, *Equal Employment Opportunity Commission* v. *Metropolitan Educational Enterprises, Inc., et al.*, also on certiorari to the same court.

*Constantine John Gekas* argued the cause for petitioner in No. 95–259. With him on the briefs was *Adrianne S. Harvitt.* *Deputy Solicitor General Waxman* argued the cause for petitioner in No. 95–779. On the briefs were *Solicitor General Days, Acting Solicitor General Dellinger, Assistant Attorney General Patrick, Deputy Solicitor General Bender, Beth S. Brinkmann, C. Gregory Stewart, Gwendolyn Young Reams, Carolyn L. Wheeler,* and *C. Gregory Stewart.*

*Patrick J. Falahee, Jr.,* argued the cause and filed a brief for respondents in both cases.†

---

†Briefs of *amici curiae* urging reversal were filed for the American Federation of Labor and Congress of Industrial Organizations by *Jonathan P. Hiatt, Marsha S. Berzon, Virginia A. Seitz,* and *Lawrence Gold;* for the Lawyers' Committee for Civil Rights Under Law by *Lawrence J.*

Justice Scalia delivered the opinion of the Court.

Title VII of the Civil Rights Act of 1964 applies to any employer who "has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 78 Stat. 253, as amended, 42 U. S. C. § 2000e(b). These cases present the question whether an employer "has" an employee on any working day on which the employer maintains an employment relationship with the employee, or only on working days on which the employee is actually receiving compensation from the employer.

I

Petitioner Darlene Walters was employed by respondent Metropolitan Educational Enterprises, Inc., a retail distributor of encyclopedias, dictionaries, and other educational materials. In 1990, she filed a charge with the Equal Employment Opportunity Commission (EEOC), claiming that Metropolitan had discriminated against her on account of her sex in failing to promote her to the position of credit manager. Soon after that, Metropolitan fired her.

On April 7, 1993, petitioner EEOC filed suit against Metropolitan and its owner, respondent Leonard Bieber (hereinafter collectively Metropolitan), alleging that the firing constituted unlawful retaliation. Walters intervened in the suit. Metropolitan filed a motion to dismiss for lack of subject-matter jurisdiction, claiming that the company did not pass the 15-employee threshold for coverage under Title VII.

Latto, Herbert J. Hansell, Paul C. Saunders, Norman Redlich, Barbara R. Arnwine, Thomas J. Henderson, Richard T. Seymour, and Teresa A. Ferrante; and for the Women's Legal Defense Fund et al. by Judith L. Lichtman, Donna R. Lenhoff, and Helen L. Norton.

Donald J. McNeil and Mona C. Zeiberg filed a brief for the Illinois State Chamber of Commerce et al. as amici curiae urging affirmance.

Sharon L. Browne filed a brief for the Pacific Legal Foundation et al. as amici curiae.

The District Court granted Metropolitan's motion to dismiss, 864 F. Supp. 71 (ND Ill. 1994), relying on *Zimmerman* v. *North American Signal Co.*, 704 F. 2d 347, 354 (CA7 1983), which affirmed a District Court's decision to count employees toward the 15-employee threshold only on days on which they actually performed work or were being compensated despite their absence. On appeal from the District Court's judgment, the Court of Appeals reaffirmed *Zimmerman*. 60 F. 3d 1225 (CA7 1995). We granted certiorari. 516 U. S. 1171 (1996).

## II

Petitioners' suit rests on Title VII's antiretaliation provision, 42 U. S. C. § 2000e–3(a), which makes it unlawful for an employer to discriminate against any of its employees for filing complaints of discrimination. Metropolitan was subject to Title VII, however, only if, at the time of the alleged retaliation, it met the statutory definition of "employer," to wit: "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." § 2000e(b).

Metropolitan's "working days" are Monday through Friday, and the "current" and "preceding" calendar years for purposes of the retaliatory-discharge claim are 1990 and 1989. The parties have stipulated that Metropolitan failed to satisfy the 15-employee threshold in 1989. During most of 1990, Metropolitan had between 15 and 17 employees on its payroll on each working day; but in only nine weeks of the year was it actually compensating 15 or more employees on each working day (including paid leave as compensation). The difference resulted from the fact that Metropolitan had two part-time hourly employees who ordinarily skipped one working day each week.*

---

*Walters (but not the EEOC) alleged that, in addition to violating Title VII's antiretaliation provision, Metropolitan also violated the basic antidiscrimination provision, 42 U. S. C. § 2000e–2(a), by failing to promote her to

## A

The parties agree that, on any particular day, all of the individuals with whom an employer has an employment relationship are "employees" of that employer. See 42 U. S. C. § 2000e(f) (defining "employee" to mean "an individual employed by an employer"). Thus, individuals who are not receiving compensation from their employer on the day in question nonetheless qualify as "employees" on that day for purposes of § 2000e(b)'s definition of "employer." Respondents contend, however, and the Seventh Circuit held here, that an employer "has" an employee for a particular working day within the meaning of § 2000e(b) only when he is actually compensating the individual on that day. This position has also been adopted by the Eighth Circuit. See *EEOC* v. *Garden & Associates, Ltd.*, 956 F. 2d 842, 843 (1992).

Petitioners contend that the test for when an employer "has" an employee is no different from the test for when an individual *is* an employee: whether the employer has an employment relationship with the individual on the day in question. This test is generally called the "payroll method," since the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll. The payroll method was approved in dictum by the Fifth Circuit in *Dumas* v. *Mount Vernon*, 612 F. 2d 974, 979, n. 7 (1980), and was adopted by the First Circuit in *Thurber* v. *Jack Reilly's, Inc.*, 717 F. 2d 633, 634–635 (1983), cert. denied, 466 U. S. 904 (1984); see also *Vera-Lozano* v. *International Broadcasting*, 50 F. 3d 67, 69–70 (CA1 1995) (re-

---

credit manager in September 1989. In granting Metropolitan's motion to dismiss, the District Court stated that the relevant years for determining Metropolitan's status as an employer were 1989 and 1990. 864 F. Supp. 71, 72 (ND Ill. 1994). For purposes of Walters' *discrimination* claim, however, the relevant years were 1988 and 1989. Because Walters did not mention this issue in her petition for certiorari or her brief on the merits, we treat any objection to the District Court's disposition of the matter as waived.

affirming · *Thurber*). The payroll method has also been adopted by the EEOC under the Age Discrimination in Employment Act of 1967, which defines "employer" in precisely the way Title VII does. See 29 U. S. C. § 630(b); Equal Employment Opportunity Commission Notice No. N–915–052, Policy Guidance: Whether Part-Time Employees Are Employees (Apr. 1990), reprinted in App. to Pet. for Cert. 30a–40a (hereinafter EEOC Policy Guidance). The Department of Labor has likewise adopted the payroll method under the Family and Medical Leave Act of 1993, which defines "employer" as a person who "employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." See 29 U. S. C. § 2611(4)(A)(i); 29 CFR §§ 825.105(b)–(d) (1996). In its administration of Title VII, the EEOC has expressed a preference for the payroll method, see EEOC Policy Guidance, but it lacks rulemaking authority over the issue, see 42 U. S. C. § 2000e–12(a); *EEOC* v. *Arabian American Oil Co.*, 499 U. S. 244, 257 (1991).

We think that the payroll method represents the fair reading of the statutory language, which sets as the criterion the number of employees that the employer "has" for each working day. In the absence of an indication to the contrary, words in a statute are assumed to bear their "ordinary, contemporary, common meaning." *Pioneer Investment Services Co.* v. *Brunswick Associates Ltd. Partnership*, 507 U. S. 380, 388 (1993) (internal quotation marks and citation omitted). In common parlance, an employer "has" an employee if he maintains an employment relationship with that individual. See 1 The New Shorter Oxford English Dictionary 1198 (1993) (def. 2: defining "have" to mean to "[p]ossess in a certain relationship"); American Heritage Dictionary 828 (3d ed. 1992) (def. 2: defining "have" to mean "to occupy a particular relation to"; giving as an example "had a great many disciples"); Webster's New International Dictionary 1145 (2d ed. 1950) (def. 2: defining "have" to mean "[t]o possess, as

something which appertains to, is connected with, or affects, one"; giving as an example "to have an ungrateful son").

Metropolitan contends that if one were asked how many employees he had *for a given working day,* he would give as the answer the number of employees who were actually performing work on that day. That is possibly so. Language is a subtle enough thing that the phrase "have an employee *for* a given *working* day" (as opposed to "have an employee on a given day") may be thought to convey the idea that the employee must actually be working on the day in question. But *no one* before us urges *that* interpretation of the language, which would count even salaried employees only on days that they are actually working. Such a disposition is so improbable and so impossible to administer (few employers keep daily attendance records of all their salaried employees) that Congress should be thought to have prescribed it only if the language could bear no other meaning. Metropolitan's own proposed test does not focus on the question, "How many employees did you have at work on a particular working day?" but rather the question, "How many employees were you *compensating* on that day?" That question, unlike the other one, simply cannot be derived from any possible reading of the text.

## B

The Court of Appeals rejected the straightforward meaning of "has fifteen or more employees" in § 2000e(b) because of a different supposed consequence of the added statutory qualification "for each working day." In its view, if only the employment relationship were the intended focus, the statute would simply have required the employer to "ha[ve] fifteen or more employees . . . in each of twenty or more calendar weeks," without the further refinement "for each working day" of each of those weeks. This point would have some force (though it would still not produce the Court of Appeals' focus on the number of employees being *compen-*

*sated* on a particular day) if indeed the ordinary meaning of "has fifteen or more employees" rendered "for each working day" superfluous. Statutes must be interpreted, if possible, to give each word some operative effect. *United States* v. *Menasche*, 348 U. S. 528, 538–539 (1955). But we do not agree that giving "has fifteen or more employees" its ordinary meaning renders "for each working day" superfluous. Without that qualification, it would be unclear whether an employee who departed in the middle of a calendar week would count toward the 15-employee minimum for that week; with the qualification, it is clear that he does not. Similarly, the adjective "working" within the phrase "for each working day" eliminates any ambiguity about whether employees who depart after the end of the workweek, but before the end of the calendar week, count toward the 15-employee minimum for that week.

The Court of Appeals thought that the mere exclusion of part-week employees was an improbable purpose of the phrase. "[I]nstances where employees begin work on Wednesdays or depart on Thursdays," it said, "are unlikely to occur with sufficient frequency to merit inclusion in a federal anti-discrimination statute." 60 F. 3d, at 1228. But it is not a matter of carving out special treatment for this (supposedly minuscule) class—as would be the case if, without the phrase "for each working day," part-week employees would unquestionably be counted toward the statutory minimum. Without the phrase *one would not be sure* whether to count them or not, and in at least some cases the matter would have to be litigated. (Does a company have 15 employees "in" a week where, on all except the last workday, it has only 14? "In" a week where it hires a new employee on Saturday, a nonworkday, to begin on the next Monday? "In" a week where, in mid-week, one of 14 employees quits and is replaced by a different 14th employee?) We are decidedly of the view that the "mere" elimination of evident ambiguity is ample—indeed, admirable—justification for the inclusion

of a statutory phrase; and that purpose alone is enough to "merit" enactment of the phrase at issue here. Moreover, the phenomenon of midweek commencement and termination of employment seems to us not as rare as the Court of Appeals believed. For many businesses payday, and hence hiring- and firing-day, is the end of the month rather than the end of the week. Metropolitan itself experienced 10 midweek arrivals or departures from its roughly 15-employee work force during 1990. Brief for Petitioner in No. 95–259, pp. 10–11.

Metropolitan points out that the interpretation we adopt produces some strange consequences with regard to the coverage of Title VII. For example, an employee who works irregular hours, perhaps only a few days a month, will be counted toward the 15-employee minimum for every week in the month. Metropolitan's approach reduces this problem (though it does not eliminate it entirely): The employee will be counted so long as he works one hour each day of the workweek. On the other hand, Metropolitan's approach produces unique peculiarities of its own: A company that has 15 employees working for it on each day of a 5-day workweek is covered, but if it decides to add Saturday to its workweek with only one less than its full complement of employees, it will become exempt from coverage (despite being in fact a "larger" business). Unsalaried employees who work the same number of hours per week are counted or not counted, depending on how their hours are scheduled. A half-time worker who works only mornings is counted; a half-time worker who works alternate days is not. The fact is that neither interpretation of the coverage provision can cause it to be an entirely accurate measure of the size of a business.

In any event, Metropolitan ought to be reluctant to appeal to practical consequences as the basis for deciding the question before us. The approach it suggests would turn the coverage determination into an incredibly complex and expensive factual inquiry. Applying it in the present cases re-

quired the parties to spend 10 months poring over Metropolitan's payroll registers, timecards, work diaries, and other timekeeping records to determine, for each working day of a 2-year period, how many employees were at work, how many were being paid on salaries, how many were on paid holiday leave, how many were on paid vacation leave, and how many were on paid sick leave.  For an employer with 15 employees and a 5-day workweek, the number of daily working histories for the 2-year period is 7,800.  The problems with Metropolitan's compensation-based approach are magnified when employees are "compensated" on days off in ways less clear cut than holiday, vacation, or sick leave.  If, for example, employees accumulate seniority rights or entitlements to holiday bonuses on their unpaid days off, it would be necessary to determine (or litigate) whether they are "receiving compensation" on those days for purposes of the coverage determination.  Under the interpretation we adopt, by contrast, all one needs to know about a given employee for a given year is whether the employee started or ended employment during that year and, if so, when.  He is counted as an employee for each working day after arrival and before departure.

## III

As we have described, in determining the existence of an employment relationship, petitioners look first and primarily to whether the individual in question appears on the employer's payroll.  Metropolitan did not challenge this aspect of petitioners' approach; its objection was the more basic one that existence of an employment relationship was not the criterion.  For their part, petitioners emphasize that what is ultimately critical under their method is the existence of an employment relationship, not appearance on the payroll; an individual who appears on the payroll but is not an "employee" under traditional principles of agency law, see, *e. g.*, *Nationwide Mut. Ins. Co.* v. *Darden*, 503 U. S. 318, 323–324 (1992), would not count toward the 15-employee minimum.

We agree with petitioners that the ultimate touchstone under § 2000e(b) is whether an employer has employment relationships with 15 or more individuals for each working day in 20 or more weeks during the year in question.

The parties' stipulation concerning the number of weeks in 1990 during which Metropolitan satisfied the 15-employee threshold using the payroll approach does not correspond precisely to the counting method petitioners have advocated here. The stipulation was arrived at by counting the number of employees on the payroll in each week of 1990, without regard to whether these employees were employed on each working day of the week. However, subtracting the nine weeks in which Metropolitan experienced midweek employment changes in 1990 from the 47 weeks of that year in which, according to the parties' stipulation, Metropolitan had employment relationships with 15 or more employees, leaves 38 weeks in which Metropolitan satisfied the 15-employee threshold under the interpretation we adopt. Therefore, Metropolitan was an "employer" within the meaning of § 2000e(b) for purposes of petitioners' retaliatory-discharge claim.

\* \* \*

The judgment of the Court of Appeals is reversed, and the cases are remanded for further proceedings consistent with this opinion.

*It is so ordered.*