Patricia A. DAGGITT, Plaintiff,

v.

UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION LOCAL 304A, Defendant.

No. Civ. 98–4046.

United States District Court,
D. South Dakota,
Southern Division.

Aug. 20, 1999.

Thomas K. Wilka, Hagen, Wilka and Archer, P.C., Sioux Falls, SD, for plaintiff.

Robert Dale Metcalf, Richard L. Kaspari, Metcalf, Kaspari, Howard, Engdahl & Lazarus, Minneapolis, MN, for defendant.

## MEMORANDUM OPINION AND ORDER

PIERSOL, Chief Judge.

[¶ 1] Pending before the Court is the motion for summary judgment filed by defendant United Food and Commercial Workers International Union Local 304A ("the Union") in this action brought by the plaintiff, Patricia A. Daggitt, under Title VII, 42 U.S.C. § 2000e, and state law. Also pending is the Union's motion to strike the affidavits of Dan Anderson, Dee

Black, Dick Brown, Susan Hanegan, Susan Jamison, Barb Kautz, Tom Muchow, Deb Schwiesow, and Bob Vanderwoude. The Court denies the Union's motion to strike the affidavits because they authenticate letters written by the affiants to former Union President Jim Lynch about the conduct of certain membership meetings, and the letters were already included in the record as deposition exhibits. Following the pretrial conference, the Court allowed the Union and the plaintiff to file additional affidavits in support of their positions on the jurisdictional issue. The Court has considered all of the filings by both sides and now denies the Union's motion for summary judgment.

[¶ 2] In her complaint, plaintiff asserts sex discrimination and hostile work environment sexual harassment claims under Title VII, as well as tort claims for assault and battery and intentional infliction of emotional distress under state law. In count one, she alleges that the Union discriminated against her during her employment with the Union as treasurer and part-time business agent and that the Union ultimately discharged her unlawfully from those two employment positions on the basis of her gender, in violation of 42 U.S.C. § 2000e–2(a)(1). Also in count one, plaintiff alleges that, as a labor organization, the Union sought to exclude or expel her from its membership and otherwise discriminated against her on the basis of her gender, in violation of 42 U.S.C. § 2000e–2(c)(1), and the Union limited her employment, deprived her of employment opportunities, and otherwise adversely affected her status as an employee, in violation of 42 U.S.C. § 2000e–2(c)(2). In count two, plaintiff alleges that the Union created a hostile work environment for her which prevented her from performing her duties as business agent and treasurer. In count three, plaintiff alleges that she was assaulted and battered by a Union officer, and in count four, she alleges the Union intentionally inflicted emotional distress upon her. She seeks compensatory and punitive damages, back pay, front pay, costs and attorney fees.

[¶ 3] The Union answered the complaint and, following discovery, moved for summary judgment. The Union raises a threshold jurisdictional issue. The Union argues that plaintiff's claims against it as her employer must be dismissed for lack of jurisdiction because the Union does not meet the Title VII definition of "employer." There is little doubt in the statutory language and the caselaw that plaintiff can bring Title VII claims against the Union both as her employer and as a labor organization so long as the statutory definitions are met. *See* 42 U.S.C. § 2000e(b) & (d); *Kern v. City of Rochester,* 93 F.3d 38, 46 (2d Cir.1996); *Yerdon v. Henry,* 91 F.3d 370, 375 (2d Cir.1996); *Chavero v. Local 241,* 787 F.2d 1154, 1155 n. 1 (7th Cir.1986). Title VII defines the term "employer" in pertinent part to mean "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[.]" 42 U.S.C. § 2000e(b). The Union is correct that, because plaintiff asserts discriminatory acts occurring in 1996 and 1997, the pertinent years of inquiry under the statute are 1995, 1996, and 1997. *See Walters v. Metropolitan Educ. Enter., Inc.,* 519 U.S. 202, 205 n., 117 S.Ct. 660, 663 n., 136 L.Ed.2d 644 (1997). The Union contends that it did not employ fifteen or more employees for each working day in each of twenty or more calendar weeks during those years. This Court's jurisdiction under Title VII depends upon whether the Union did, in fact, employ fifteen or more employees in that time period. *See Walters,* 519 U.S. at 205, 117 S.Ct. at 663; *Devine v. Stone, Leyton & Gershman, P.C.,* 100 F.3d 78, 80 (8th Cir.1996).

[¶ 4] The Union argues that plaintiff can count as employees only those elected members of the Union's ten-member Executive Board who also held an additional Union employment position as Business

Agent, Assistant Business Agent, or Treasurer. Moreover, the Union argues that, during the relevant time period, it issued regular, weekly paychecks to persons holding eight positions (some of whom were both Executive Board members and union employees): President, Treasurer, Business Agent (2), Assistant Business Agent (3), and clerical secretary. (August 12, 1999 Affidavit of Mark Anderson at ¶ 4–5.) The Union concedes that, at times, Executive Board members who did not also hold an employment position with the Union were issued weekly paychecks· to reimburse them for time lost from their employment with John Morrell and Company or other local employers on account of union business or for time spent by the officers on their own time for union business. (*Id.* at ¶ 6.) The plaintiff produces some evidence that as many as eleven individuals received salary from the Union. (Doc. 51, August 16, 1999 Patricia Daggitt Affidavit, Ex. B.) There is some question whether Executive Board members may be counted as employees because, as the chief executive authority of the Union, the Board members occupy the employer side of the employer/employee relationship. *See Chavero,* 787 F.2d at 1156–57. But even if the Court resolves this legal and factual dispute in the light most favorable to the plaintiff as the nonmoving party on summary judgment, the plaintiff still would establish only that the Union employed ten or eleven persons, and not the fifteen necessary to confer federal jurisdiction upon this Court. *See Devine,* 100 F.3d at 82 (noting that plaintiff has burden to present sufficient evidence that defendant was her · employer under Title VII because plaintiff has burden to prove federal jurisdiction).

[¶ 5] The issue ultimately turns, as the plaintiff contends, on whether union stewards may be counted as Union employees for Title VII purposes. The Union strongly resists the idea of counting union stewards as employees. The parties have not cited a case, and the Court has been unable to locate one, which addresses this precise issue. It is undisputed that, for the relevant time periods, the Union "has approximately fifty stewards, who serve as the lowest level of Union representative, assisting their coworkers with day-to-day concerns regarding their employment in a particular department and/or on a particular shift in a bargaining unit represented by the Union." (Doc. 34, Affidavit of Edward D. Thomson at ¶ 2; Doc. 51, Supplemental Affidavit of the Plaintiff, Exs. C, D, E.) If these fifty union stewards are counted as the Union's employees, then plaintiff easily establishes federal jurisdiction under Title VII. If they are not counted, then federal jurisdiction under Title VII does not exist.

[¶ 6] The parties devoted substantial time and effort in reviewing Union payroll and work records to determine precise dates when union stewards received checks from the Union and for what purposes. Through the recently-filed affidavits, the parties dispute whether the Union records are complete, whether the parties have made accurate use of them, and what, in fact, the records show. The Court concludes, however, that the intense focus upon the Union's financial records is ultimately unhelpful in resolving the issue at hand. In *Walters,* the Supreme Court considered the question "whether an employer 'has' an employee on any working day on which the employer maintains an employment relationship with the employee, or only on working days on which the employee is actually receiving compensation from the employer." *Walters,* 519 U.S. at 204, 117 S.Ct. at 662. The Supreme Court held that "the ultimate touchstone under § 2000e(b) is whether an employer has employment relationships with 15 or more individuals for each working day in 20 or more weeks during the year in question." *Id.* at 212, 117 S.Ct. at 666. Under this interpretation, the Supreme Court said, the coverage question does not have to be "an incredibly complex and expensive factual inquiry." *Id.* at 210, 117 S.Ct. at 665. Rather, under the interpre-

tation adopted by the Supreme Court, "all one needs to know about a given employee for a given year is whether the employee started or ended employment during that year and, if so, when. He is counted as an employee for each working day after arrival and before departure." *Id.* at 211, 117 S.Ct. at 665–66.

[¶ 7] The Eighth Circuit has said that "[c]entral to the meaning" of the words "employer" and "employee" in 42 U.S.C. § 2000e(b) and (f) "is the idea of compensation in exchange for services: an employer is someone who pays, directly or indirectly, wages or a salary or other compensation to the person who provides services—that person being the employee." *Graves v. Women's Prof'l Rodeo Ass'n, Inc.,* 907 F.2d 71, 73 (8th Cir.1990). In the Eighth Circuit's words, "[t]he better reasoned cases hold that the substance of the employment relationship determines whether an individual is an employee under Title VII.... The actual duties and role of the individual govern the resolution of the issue." *Devine,* 100 F.3d at 81. An employer, like the Union, "may not avoid Title VII by affixing a label to a person that does not capture the substance of the employment relationship." *Id.* Thus, the Union's emphasis on the points that union stewards are elected by the union membership, that compensation paid to stewards by the Union results in no net income to the union stewards, and that service as a union steward is an aspect of Union membership and not of employment with the Union misses the true substance of the employment relationship between the Union and its stewards for purposes of applying Title VII.

[¶ 8] The Union acknowledges that union stewards receive two types of compensation from the union: dues reimbursement and "lost time." On a quarterly basis, the Union reimburses stewards for the actual amount of Union dues withheld from their paychecks during the preceding quarter by their regular employer, for instance, John Morrell and Company. These payments may be as high as $91.00, the maximum amount of dues that might be deducted from a full-time employee's paychecks during a three-month period. Additionally, the Union may pay a steward "lost time." If a steward's presence is required at a union-related meeting which occurs during the steward's workday at John Morrell, the company may release the steward for a period of time to attend that meeting, but dock the steward for the time missed from work. The work period docked is called "lost time," and the Union reimburses stewards for any "lost time" through a voucher and separate payment system, with the union payment usually issued to the steward in the same payroll week in which the employer docks the steward's pay. The Union admits that IRS W–2 forms reflecting these payments for "lost time" are issued to the stewards by the Union at the end of each calendar year because the payments reflect reimbursement of lost earned income to the stewards. The plaintiff notes, and the Union does not dispute, that the Union pays a third type of compensation to union stewards. In February of each year, the Union reimburses the stewards for the 401(k) plan's employer contribution lost by reason of attending to Union business. (Doc. 51, Daggitt Aff. at ¶ 6.) Plaintiff also suggests, and the Union disputes, that the Union pays stewards for "time spent," that is, time the steward spends on Union business on the steward's own private time, and not during a regular workshift resulting in "lost time."

[¶ 9] The Court concludes that the Union's reimbursements to stewards for "lost time," membership dues, and 401(k) employer contributions is sufficient to establish an employer-employee relationship for Title VII purposes. If the Union did not reimburse union stewards for "lost time," and 401(k) employer contributions, the stewards would lose that amount of earned income and contributions. By making these reimbursements, the Union directly compensates the stewards for leaving their

regular employment workshifts to render services for the Union. This clearly indicates an employer-employee relationship between the Union and the union stewards as discussed in *Walters, Devine,* and *Graves.* Likewise, the Union's quarterly reimbursement of union dues deducted from the stewards' regular paychecks directly compensates the stewards for providing services to the Union. By reimbursing the full amount of union dues, the Union essentially grants its stewards free membership in the Union, but it is the rendering of services to the Union that entitles the union stewards to free Union membership. This is also a benefit conferred by the Union as employer on the stewards as employees, as discussed in the cited cases. There is evidence in the record that the Union has, for many years, treated the union stewards as employees, requiring them to file IRS W-4 forms to receive payments from the Union, and that the Union President may replace union stewards or fill vacancies between elections. (Doc. 35, Bob Vanderwoude Affidavit.)

[¶ 10] The Union argues that union stewards should not be counted as employees because any stewards who feel discriminated against would be required to bring a Title VII suit against the Union in its capacity only as a labor organization under 42 U.S.C. § 2000e–2(c)(1), rather than under the employment discrimination provision of 42 U.S.C. § 2000e–2(a)(1). The Court does not agree. If, as the Court concludes, the union stewards are in an employment relationship with the Union, there is no reason why the stewards could not also sue the Union as an employer and as a labor organization, as the plaintiff does here.

[¶ 11] For the reasons stated, the Court concludes that union stewards are counted as Union employees for purposes of establishing federal jurisdiction in this Title VII case. This is not to say that the Court would, in all other legal contexts, similarly hold that union stewards are employees of the Union. For the limited purposes of this Title VII case, the plaintiff has met her burden to establish that the Union employed fifteen or more employees for each working day in each of twenty or more calendar weeks in 1995, 1996 and 1997. 42 U.S.C. § 2000e(b); *Walters,* 519 U.S. at 211, 117 S.Ct. at 665–66. The Court is not required to reach the issue of whether, during the Union's trusteeship in the latter portion of 1997, the plaintiff could count employees of the International Union to satisfy the Title VII requirements. *See Artis v. Francis Howell North Band Booster Ass'n, Inc.,* 161 F.3d 1178, 1184 (8th Cir.1998); *Baker v. Stuart Broadcasting Co.,* 560 F.2d 389, 392 (8th Cir.1977). The Court concludes that plaintiff has established federal jurisdiction under Title VII, and the Union's motion for summary judgment on this ground is denied.

[¶ 12] The Union also moves for summary judgment on plaintiff's Title VII claims on the ground that plaintiff cannot show that any discrimination directed toward her was based on her gender. The Court has carefully reviewed the pleadings, affidavits, depositions, and exhibits produced by the parties. While some of the gender-based evidence the plaintiff produces pertains to other female union members and provides only circumstantial support for plaintiff's own claims, the Court finds that the plaintiff has come forward with sufficient evidence of gender discrimination directed personally toward her to create genuine issues of material fact for trial on the Title VII counts, particularly with regard to whether the Union's conduct was sufficiently severe or pervasive as to affect the plaintiff's terms and conditions of employment. Plaintiff was fired from two Union employment positions while she was an elected member of the Union Executive Board. There is evidence that when Jim Larson assumed the Union Presidency, he indicated that he wanted to replace the plaintiff as treasurer of the Union with a male union member

(Daggitt Deposition Tr. at 82–83); Larson eliminated charging authorization on the plaintiff's Union American Express credit card, but not on the American Express credit cards used by male union officials (*id.* at 84–86); Roger Raile, a union member, called plaintiff a "dumb fucking cunt" at the December 11, 1996 membership meeting (*id.* at 125–28); Jim Lynch, Roger Raile, Roger Benson, and Jim Larson stated that no woman has any right to be on the Union's Executive Board (*id.* at 146); and plaintiff and other female union members were booed and harassed at February and April 1997 union membership meetings while President Lynch laughed and did nothing about it. (*Id.* at 155–56.)

[¶ 13] The Court has considered these examples, the additional facts underlying the assault and battery claim, and the remainder of the voluminous record in the light most favorable to the nonmoving party, the plaintiff. The Court has considered the frequency of the alleged discriminatory conduct—which was ongoing over at least an eighteen month period; its severity—which was substantial; whether the conduct was physically threatening or humiliating—and plaintiff was both physically threatened and humiliated; and whether the conduct interfered with the plaintiff's work performance—it resulted in the termination of her employment with the Union. More than a few isolated incidents are at issue. *Cf. Scusa v. Nestle U.S.A. Co.,* 181 F.3d 958, 969–70 (8th Cir.1999). The Court concludes that a jury must determine from these and other facts presented in the record whether the conduct of Union officers and members was motivated by gender discrimination, union politics or other reasons, but plaintiff has produced sufficient evidence to survive the motion for summary judgment. Therefore, the Union's motion for summary judgment on this ground is also denied.

[¶ 14] The Union argues that summary judgment in its favor is appropriate on the state law assault and battery claim because President Jim Larson's physical contact with plaintiff during the altercation in question was legally justified. Larson is not named as a separate defendant, and the Union does not raise any issue as to whether Larson's conduct can be imputed to the Union. The Court has reviewed the evidence and finds that the plaintiff has created genuine issues of material fact for trial as to whether Larson's conduct amounted to assault and battery. The Union may raise at trial the affirmative defense that Larson was legally justified. Finally, the Court finds that plaintiff has created genuine issues of material fact for trial on her claim of intentional infliction of emotional distress to proceed to trial. A jury will decide, pursuant to the Court's instructions, whether the Union's conduct was outrageous and intolerable under South Dakota law.

[¶ 15] During the summary judgment briefing, plaintiff raised an issue of retaliation by the Union. Plaintiff filed her administrative discrimination charge in April 1997 and was not fired from her second union employment position until July 1997. She now seems to claim that events between April and July were retaliatory, but plaintiff does not confirm that she ever filed a charge of discrimination based on retaliation. She states in her supplemental brief: "Retaliation is not a separate cause of action, but is evidence of Defendant's bad faith and illegal efforts to drive away Plaintiff, both as an employee and a union member." (Doc. 46 at 7.) The Court understands plaintiff to concede that she has not stated a separate Title VII claim for retaliation that will be instructed and submitted to the jury at trial. Accordingly,

IT IS ORDERED:
(1) that the Court denies the Union's motion to strike affidavits. (Doc. 44.)
(2) that the Court denies the Union's motion for summary judgment. (Doc. 23.)