# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1319

_____

| | | |
|---|---|---|
| Patricia A. Daggitt, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| United Food and Commercial | * | Appeal from the United States |
| Workers International Union, | * | District Court for the |
| Local 304A, | * | District of South Dakota. |
| | * | |
| Appellant, | * | |
| | * | |
| United Food and Commercial Workers | * | |
| International Union, AFL-CIO, | * | |
| | * | |
| | * | |
| Defendant. | * | |

_____

Submitted: October 19, 2000
Filed: April 4, 2001

_____

Before McMILLIAN, BOWMAN, and LOKEN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

United Food and Commercial Workers International Union, Local 304A (UFCW or union), appeals from an adverse jury verdict in a Title VII sex discrimination and sexual harassment suit brought by Patricia Daggitt. UFCW argues that the District

Court[1] should have dismissed Daggitt's sexual harassment claim for lack of subject matter jurisdiction, and that the court improperly enhanced the attorney fees awarded to Daggitt's counsel. We affirm.

## I.

UFCW represented Daggitt during her employment with John Morrell & Co. as a traffic clerk and dispatcher in Sioux Falls, South Dakota. Daggitt actively participated in the union, serving on its executive board and working for the union as treasurer and part-time assistant business agent. In 1998, Daggitt sued UFCW, asserting claims for sex discrimination and sexual harassment under Title VII, 42 U.S.C. §§ 2000e to 2000e-17 (1994 & Supp. IV 1998), assault and battery, and intentional infliction of emotional distress. Before trial, UFCW moved for summary judgment, asserting that the District Court lacked subject matter jurisdiction over the union because it was not an "employer" as defined by Title VII. To be subject to suit under Title VII, an employer must have "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). UFCW claimed it did not meet this fifteen-employee threshold. The District Court denied summary judgment, finding that UFCW in fact met the employee threshold because the union's shop stewards counted as employees for purposes of jurisdiction under Title VII. Daggitt v. United Food & Commercial Workers Int'l Union Local 304A, 59 F. Supp. 2d 980, 984 (D.S.D. 1999).

The jury returned a verdict in favor of Daggitt on her sex discrimination, sexual harassment, and intentional infliction of emotional distress claims. The jury found that UFCW discriminated against Daggitt on the basis of sex, but only in its capacity as a labor organization and not as her employer, and awarded Daggitt $5000 in punitive

---

[1]The Honorable Lawrence L. Piersol, Chief Judge, Unites States District Court for the Southern District of South Dakota.

damages. On the sexual harassment claim, the jury rendered a general verdict in Daggitt's favor, awarding her $50,000 in punitive damages. The jury form did not specify whether the jury found that the union had sexually harassed Daggitt in its capacity as a labor organization or as an employer. Following additional post-trial motions, the District Court entered an amended judgment awarding Daggitt $33,847.13 in attorney fees and $893.57 in expenses pursuant to 42 U.S.C. § 2000e-5(k), and specifying that a $50,000 cap on total punitive damages applied to Daggitt's award, see 42 U.S.C. § 1981a(b)(3)(A) (1994). UFCW appeals only the verdict on Daggitt's sexual harassment claim and the attorney fees award.

## II.

Title VII authorizes suit against certain employers, 42 U.S.C. § 2000e-2(a), and against labor organizations, 42 U.S.C. § 2000e-2(c), as long as the statutory definitions are met. 42 U.S.C. § 2000e(b), (d) (definitions). The parties agree that UFCW is a labor organization within the meaning of Title VII.

Daggitt contends that her sexual harassment claim proceeded against the union both as a labor organization of which she was a member and as her employer. The union disputes this contention, claiming in its brief that Daggitt's sexual harassment claim was pleaded and submitted to the jury against the union solely in its capacity as her employer. We disagree.[2]

---

[2]Count one (sex discrimination) of Daggitt's complaint against UFCW alleges violations of both 42 U.S.C. § 2000e-2(c)(1) and § 2000e-2(c)(2). It sets out a factual basis for these allegations that includes actions taken in relation to Daggitt's employment by the union and in relation to her participation in the union as a member. Count two (sexual harassment) incorporates by reference all the allegations in count one and alleges that the actions cited also created a hostile working environment for Daggitt in violation of Title VII. We need not address UFCW's assertion that Daggitt failed to sufficiently plead a sexual-harassment-in-union-participation claim because we

The plain language of the unchallenged jury instructions belies UFCW's assertion. Instruction eight states that Daggitt claimed the union's sexual harassment created "a hostile or abusive environment which prevented the plaintiff from performing her duties as Assistant Business Agent and treasurer and in fully participating in union activities." Jury instruction fourteen further describes Daggitt's sexual harassment claim: "The plaintiff claims that Local 304A created a hostile or abusive environment, which impacted her both as a union employee and as a participating member of the labor union." It directs the jury to "determine whether the harassment was sufficiently severe or extensive to alter the conditions of the plaintiff's employment or to alter the extent to which the plaintiff could participate in union activities." Further, the instruction charges the jury to "also consider the physical environment at the Labor Temple and at John Morrell & Company where the plaintiff participated in union activities as a union employee and union member." Finally, instruction fifteen directs the jury that, "[t]o establish a claim for sexual harassment based on a hostile or abusive environment, the plaintiff must prove that the conduct of Local 304A officers and members toward her while she worked as a Local 304A employee and participated in union activities would not have occurred but for her gender." We find that the above-emphasized language of instructions eight, fourteen, and fifteen clearly and unambiguously directed the jury to consider Daggitt's sexual harassment claim both in the context of her employment by UFCW and in the context of her participation as a member of the union.

UFCW submitted objections to the jury instructions and verdict form, but made no objection to instructions eight, fourteen, or fifteen. The union thus has waived any assignment of error to those instructions. See Fed. R. Civ. P. 51 ("No party may assign

find that the claim was before the court and submitted to the jury without objection from the union. We note, furthermore, that even if we accepted UFCW's argument and found that Daggitt's sexual harassment claim had not been submitted to the jury at all on a labor organization theory of liability, our determination of the status of the union's stewards would control and lead us to affirm the jury's verdict. See infra Part III.

as error the giving [of] an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."); Phillips v. Parke, Davis & Co., 869 F.2d 407, 409 (8th Cir. 1989) ("Rule 51 makes it incumbent upon the attorneys in a civil case to ascertain how the jury is to be instructed and to state any objections before the jury retires."). Where a party has waived an objection to a jury instruction, we review the instruction for plain error. Reversal will be warranted only in "'the exceptional case where the error has seriously affected the fairness, integrity, or public reputation of judicial proceedings.'" Figge Auto Co. v. Taylor, 325 F.2d 899, 907 (8th Cir. 1964) (citation to quoted authority omitted). This suit does not present such an exceptional case. Thus, we find that Daggitt's sexual harassment claim was properly before the jury on a union-participation theory.[3]

### III.

Daggitt asserted her sexual harassment claim against UFCW on a second theory of liability that also was submitted to the jury—that she was sexually harassed as an employee of the union. Where a jury renders a general verdict on claims presented under two or more theories, and where the reviewing court is unable to determine the theory upon which the jury based its award, each theory standing alone must provide a legally sound basis for granting relief. Robertson Oil Co. v. Phillips Petroleum Co., 871 F.2d 1368, 1375 (8th Cir. 1989). If one of the theories is found to be an unsound basis for relief, the reviewing court must reverse and remand for a new trial on only the legally sound theories. Id. Because we cannot ascertain whether the jury awarded Daggitt punitive damages on her sexual harassment claim because of the union's actions as her labor organization or as her employer, we must address the question of whether

---

[3]Because UFCW does not challenge the sufficiency of the evidence supporting the jury's verdict on this claim, we make no determination on that issue.

the District Court had jurisdiction to entertain Daggitt's employer-liability theory under Title VII.

UFCW argues that the District Court should have dismissed Daggitt's sexual harassment claim for lack of subject matter jurisdiction under Title VII because the court erred in holding that the local union's stewards are "employees" of the union. The District Court found that for the relevant time periods UFCW had approximately fifty union stewards.[4] Daggitt, 59 F. Supp. 2d at 982. In addition, the District Court found that without counting the union stewards the union had only ten or eleven employees during those years. Id. Thus, the status of the union stewards controls jurisdiction in this case. Whether union stewards can be counted as employees for jurisdictional purposes in a Title VII case is a question of first impression in this Circuit.[5]

In reviewing the District Court's determination that the UFCW's shop stewards are employees of the union for purposes of federal-court subject-matter jurisdiction over Title VII claims against the union in its capacity as an employer, we apply the

---

[4]Title VII requires that the employer have fifteen employees for twenty or more calendar weeks in the current or preceding calendar year. 42 U.S.C. § 2000e(b). Daggitt's claims arose from acts committed in 1996 and 1997; hence the years relevant to counting the union's employees are 1995, 1996, and 1997.

[5]Although our search uncovered no on-point cases in this Circuit, or in other circuits, courts have held, in other contexts, that union stewards were or should have been treated as employees or agents of their union. See, e.g., Reinforcing Iron Workers Local Union 426 v. Bechtel Power Corp., 634 F.2d 258 (6th Cir. 1981) (concluding employer payments to industry steward fund violated § 302(a) of Labor Management Relations Act because steward was not employee of the employer); NLRB v. Int'l Longshoremen's & Warehousemen's Union, Local 10, 283 F.2d 558 (9th Cir. 1960) (holding labor union culpable under Taft-Hartley Act for acts performed by its agents, i.e., by union stewards); Caldwell v. Farley, 285 P.2d 294 (Cal. Dist. Ct. App. 1955) (sustaining determination that assault committed by union steward during discussion about possible strike was committed within scope of steward's agency with union).

ordinary standards of appellate review. Thus, we review factual findings for clear error and we review legal conclusions de novo. Appley Bros. v. United States, 164 F.3d 1164, 1170 (8th Cir. 1999).

The union argues that its stewards should not be counted as employees because they are in "volunteer position[s] reserved for Union members in good standing who receive their co-workers' vote of confidence through election." Appellant's Brief at 21. Furthermore, the union argues, stewards do not receive "net income" from performing their duties; in other words, for performing their duties as stewards they do not make money over and above their usual salaries received as employees of John Morrell.

The District Court found that the union awarded three types of monetary benefits to its stewards. First, UFCW reimbursed stewards for the full amount of the union dues withheld by John Morrell from the stewards' paychecks during the preceding quarter. The reimbursement payments could be as high as ninety-one dollars per quarter. Second, UFCW paid the stewards for "lost time." When a steward was required to perform union duties during the steward's regular work time at John Morrell, the company would dock the steward's regular pay for the time missed. This docked time, called "lost time," would be compensated by the union at the employee's regular pay rate through a voucher and separate payment system. The union required stewards to fill out W-4 tax forms to receive "lost time" pay, and the union issued stewards W-2 tax forms each year reflecting these payments. Finally, each year UFCW paid an employer contribution into the 401(k) plan at John Morrell in an amount equal to the contribution lost by each steward by reason of attending to union affairs during work hours. These findings of fact are not clearly erroneous. Indeed, they are undisputed. We therefore turn to the law applicable to determining employee status for purposes of Title VII.

Title VII defines "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). Such a circular definition adds little to our inquiry. Thus, we must

consider traditional definitions of employer and employee to identify the relationship required by § 2000e(b). Graves v. Women's Prof'l Rodeo Ass'n, 907 F.2d 71, 73 (8th Cir. 1990) (finding legislative history of Title VII explicitly provides that dictionary definition of employee should govern). "Central to the meaning of these words is the idea of compensation in exchange for services: an employer is someone who pays, directly or indirectly, wages or a salary or other compensation to the person who provides services—that person being the employee." Id. Compensation is an "essential condition to the existence of an employer-employee relationship." Id. Without compensation, no combination of other factors will suffice to establish the relationship.

UFCW argues that its members who are stewards do not receive "material compensation" or "net income" from UFCW for the stewards' services, and thus they are not employees for purposes of Title VII. The union defines material compensation as payment that gives the steward income over and above the income the steward would earn at John Morrell if the steward did not have to clock out to perform union duties. Reimbursement of union dues paid by the stewards should not be counted as material compensation, according to UFCW, because such reimbursement is a matter of union membership policy. These payments, the union argues, merely reflect reimbursement of costs incurred in holding a volunteer position in the union.

We disagree and conclude that the District Court correctly determined that monetary benefits flowing from UFCW to its stewards amounted to compensation for their services. The lost-time pay received by the stewards is part of the stewards' earned income, as evidenced by the use of W-4 and W-2 forms to account for these payments. See Eisenberg v. Advance Relocation & Storage, Inc., 237 F.3d 111 (2d Cir. 2000) (holding that defendant's use of 1090 form rather than W-2 form favored identifying plaintiff in Title VII suit as independent contractor rather than employee). UFCW's contributions to the John Morrell 401(k) plan also indicate that for some portion of the time that the stewards are at work, UFCW is directly responsible for the stewards' wages and for employee benefits that are tied to the amount of those wages.

Union reimbursement of stewards' dues also compensates the stewards for their service as union representatives. The union's characterization of these payments as mere matters of union membership is not controlling here. UFCW reimburses the stewards' union dues because the stewards are performing a vital service in furtherance of the union's purpose—representing the interests of employees in enforcing the collective bargaining agreement within the workplace. Reimbursement is but a form of compensation for performing a service for the union. Thus, the union's assertion that such reimbursement is merely a policy choice regarding their treatment of certain union members fails to convince us that the monies stewards receive should not be construed as compensation indicative of an employer-employee relationship. Because we are satisfied that compensation flowed from the union to the stewards, our analysis turns to examining other aspects of the parties' relationship.

Previous challenges to Title VII jurisdiction based on a labor union's status as an employer have focused on whether members of a union's executive board may be counted toward Title VII's fifteen-employee requirement. See, e.g., Kern v. City of Rochester, 93 F.3d 38, 47 (2d Cir. 1996) (holding non-officer executive board members did not perform traditional employee duties and therefore were not employees for purposes of Title VII jurisdiction), cert. denied, 520 U.S. 1155 (1997); Chavero v. Local 241, Div. of Amalgamated Transit Union, 787 F.2d 1154, 1157 (7th Cir. 1986) (holding that union executive board members are not "employees" for purposes of Title VII jurisdiction because directors are employers rather than employees unless they perform traditional employee duties). Title VII cases also frequently address whether the worker at issue is an employee of the defendant or an independent contractor. See, e.g., Schwieger v. Farm Bureau Ins. Co., 207 F.3d 480, 484-87 (8th Cir. 2000) (determining whether insurance sales agent was employee or independent contractor for purposes of Title VII jurisdiction); Birchem v. Knights of Columbus, 116 F.3d 310, 312-13 (8th Cir. 1997) (performing independent contractor analysis in ADA context, analogous to Title VII inquiry). While these cases do not directly address the type of

relationship at issue here, we look to the factors examined in these cases to further identify indicia of an employment relationship between UFCW and its stewards.

We first consider the nature of the working relationship between the parties, particularly the union's right to control the manner and means by which the stewards accomplish their tasks. See Schwieger, 207 F.3d at 483. "The actual duties and role of the individual govern the resolution of the [employment] issue." Devine v. Stone, Leyton & Gershman, P.C., 100 F.3d 78, 81 (8th Cir. 1996), cert. denied, 520 U.S. 1211 (1997). Although there is little evidence in the record detailing the day-to-day relationship between the stewards and UFCW, the District Court credited evidence that the union had, "for many years, treated the union stewards as employees." Daggitt, 59 F. Supp. 2d at 984. The court also noted that the union president possessed authority to replace stewards and to fill steward vacancies between elections. Through the union president's power to replace stewards and to fill steward vacancies, the union can exert control over the manner in which the stewards represent the union in dealings with fellow union members and the employer. Such control over the termination and hiring of stewards is enough, in these circumstances, to find that the union had a measure of control over the manner and means by which the stewards performed their duties.

Next, we consider the application of the multiple factors frequently used to analyze whether an individual is an employee or an independent contractor. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-24 (1992) (examining twelve indicators of traditional agency relationship). These factors include the skill required, source of the tools used, location of the work accomplished, duration of the parties' relationship, right to assign additional projects, the putative employee's discretion over where and how long to work, the method of payment, the putative employee's role in hiring and paying assistants, whether the hired party's work is performed in the regular business of the hiring party, the business the hiring party is in, provision of employee benefits, and the tax treatment of the hired party. Not every factor discussed in Darden

applies to the steward-union relationship. We consider only those for which the record contains relevant evidence.

Applying the relevant factors, we find that several characteristics of the relationship between UFCW and its stewards point to a conclusion that the shop stewards are employees of the union for Title VII purposes. The length of the UFCW-steward relationship is neither brief nor insubstantial. UFCW stewards generally serve three-year terms. Also, stewards perform acts within the regular business of the union by representing the interests of other union members in those members' employment. This representation seeks to protect the rights won by the union through the collective bargaining process on a day-to-day, on-the-job basis, which undoubtedly furthers the union's mission. Evidence in the record suggests that the stewards are directed in their duties by UFCW's business agents, who in turn report to the union's executive board. Such supervision lends further weight to the view that the stewards are properly characterized as employees of the union for purposes of subject-matter jurisdiction over Title VII claims against the union qua employer.

Relying upon the District Court's findings, we agree that ordinary definitions of employer and employee, as well as ordinary principles of agency, establish the existence of an employer-employee relationship between the union and its stewards sufficient to require that the stewards be counted toward Title VII's fifteen-employee jurisdictional requirement. Furthermore, by employing the "payroll test," as the District Court correctly did, we find that the District Court properly determined that UFCW "had" fifteen employees for the requisite time period to establish jurisdiction over Daggitt's sexual harassment claim. See Walters v. Metro. Educ. Enters., Inc., 519 U.S. 202, 211 (1997) (holding that payroll test should be used when calculating whether an employer "has" an employee under Title VII; test requires that an employee be counted "for each working day", not just for each day actually worked). Therefore, we affirm the District Court's determination that it had subject-matter jurisdiction over Daggitt's Title VII claims against the union as Daggitt's employer. Because Daggitt's sexual

harassment claim was properly submitted to the jury under theories charging the union with liability both as a labor organization and as an employer, we affirm the jury's general verdict in favor of Daggitt on this claim.

IV.

UFCW next argues that the District Court abused its discretion by enhancing the plaintiff's attorney fees award by twenty-five percent above the lodestar figure. The prevailing party in an action for unlawful employment practices may recover "a reasonable attorney's fee (including expert fees) as part of the costs" awarded to that party. 42 U.S.C. § 2000e-5(k). The District Court awarded Daggitt the lodestar amount plus a twenty-five percent enhancement, bringing the total amount of the fee to $33,547.13. Given the complexity of the case and the modest nature of the lodestar figure, we believe this fee award was entirely reasonable. Upon careful review of the record and the arguments submitted, we hold that the District Court did not abuse its discretion when it awarded the enhancement. See Forshee v. Waterloo Indus., Inc., 178 F.3d 527, 532 (8th Cir. 1999) (standard of review). We therefore affirm the fee award to Daggitt.

V.

In sum, we hold that the union stewards of UFCW are "employees" of the union for purposes of establishing jurisdiction over the union under 42 U.S.C. § 2000e(b). Because Daggitt's sexual harassment claim was properly submitted to the jury on her employee-of-the-union theory as well as her union-membership theory, and because UFCW raises no challenge to the sufficiency of the evidence on either theory, we affirm the judgment of the District Court. The award of attorney fees is also affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.