In re Larry Lee WOODY, Debtor.

Larry Lee Woody, Plaintiff–Appellee,

v.

United States Department of Justice, Defendant–Appellant.

Larry Lee Woody, Plaintiff–Appellee,

v.

United States Department of Education, Defendant–Appellant.

BAP Nos. KS–05–124, KS–05–125.
Bankruptcy No. 02–21662–7.
Adversary Nos. 02–6095, 02–6096.

United States Bankruptcy Appellate Panel for the Tenth Circuit.

June 16, 2006.

Submitted on the briefs: * Eric F. Melgren, United States Attorney (Christina Medeiros, Assistant United States Attorney, and Christopher Allman, Assistant United States Attorney, with him on the brief), Kansas City, Kansas, for Appellants.

Kenneth M. Gay of Consumer Advocate, L.L.C., Lenexa, Kansas, for Appellee.

Before BOHANON, BROWN, and McNIFF, Bankruptcy Judges.

## OPINION

BOHANON, Bankruptcy Judge.

The United States Department of Justice and the United States Department of Education (collectively, the "Creditors"), timely appeal a final judgment entered by the United States Bankruptcy Court for the District of Kansas discharging the Chapter 7 debtor's Department of Education student loans (the "523 Loan") pursuant to the "undue hardship" provision in 11 U.S.C. § 523(a)(8), and debtor's Health Education Assistance Loan (the "HEAL loan") pursuant to the "unconscionable" provision in 42 U.S.C. § 292f(g).[1] The parties have consented to this Court's jurisdiction because they have not elected to have the appeal heard by the United States District Court for the District of Kansas.[2] For the reasons stated below, the bankruptcy court's Judgment is AFFIRMED.

## I. Background

Between 1979 through 1983, Larry Lee Woody, the debtor ("Woody" or "debtor"), obtained a series of loans to assist him in procuring a chiropractic degree.[3] Woody obtained two different types of student loans. The first type of loan is governed by the dischargeability standard under § 523(a)(8) and the second type is governed by the HEAL program. The original aggregate principal debt on the 523 loan is $25,000 with interest accruing annually at 7% or $4.54 per day. The original principal debt on the HEAL loan is $4,700 with interest accruing annually at 4.550% or $2.31 per day. By July 12, 2005, Woody owed more than $53,000 on the 523 Loan and more than $18,750 on the HEAL loan.

Woody failed to complete the curriculum to receive a chiropractic degree. He had

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. 28 U.S.C. § 158(a)(1); Fed. R. Bankr.P. 8002(a).

2. 28 U.S.C. § 158(b)-(c); Fed. R. Bankr.P. 8001(e).

3. In 1970, Woody received a Bachelor of Science degree with a major in accounting and a minor in general business.

approximately one and one half semesters left to complete his degree, but discontinued his studies in 1983. Woody has never worked as a chiropractor.

From 1998 until early 2001, Woody held a number of temporary positions and collected unemployment compensation, presumably during the periods he was eligible to do so. With the exception of two years with no income, Woody's annual income, while varying considerably, rarely surpassed $15,000. The record does not suggest that Woody quit or was fired from any of the temporary positions he held or that he has otherwise abused his right to collect unemployment benefits.

In May 2002, Woody filed Chapter 7 bankruptcy. Woody's bankruptcy was precipitated by a heart attack in 2000 when he incurred substantial medical bills (approximately $67,000).[4]

On October 7, 2002, Woody filed two complaints seeking to discharge his student loan debts. In one, he sought to discharge his 523 loan debt to the DOE alleging "undue hardship" under 11 U.S.C. § 523(a)(8). In the other, he sought to discharge his HEAL loan under the "unconscionability" standard of 42 U.S.C. § 292f(g).[5]

On July 12, 2005, the bankruptcy court held a trial on the two adversary proceedings. The bankruptcy court found from the evidence that Woody was 58 years old, single with no dependents; that he was employed full-time by the Internal Revenue Service ("IRS") with an annual salary of approximately $38,000;[6] that it is unlikely Woody's income will increase materially, either by promotion or other means, over the amount he is now earning; that his monthly net income was $1,856 and his monthly expenses were $1901; that for 2006, his projected monthly net income increased to $1,864 and his monthly expenses decreased to $1,785; that Woody owns no real property and virtually no personal property of note except for a 15 year-old pickup truck with a rebuilt engine, his retirement accounts (worth approximately $3,000),[7] and an insurance policy with cash value; and that he paid $995.00 toward his 523 loan through Treasury Department offsets and made one payment of $484.48 toward his HEAL loan in 1987.

At the conclusion of the trial, the bankruptcy court announced its ruling. With respect to the 523 loan, the bankruptcy court held that Woody had demonstrated by a preponderance of the evidence that it would be an undue hardship on him if he were required to repay the 523 loan.[8] With respect to the HEAL loan, the bankruptcy court entered an order of partial discharge of the loan, finding that it would be unconscionable for Woody to pay anything more than the original principal on the loan.[9]

4. Schedule F, *in* Appellant's Appendix ("App."), Vol. II, at 0541–0546.

5. Woody initially sought to discharge his HEAL loan under 11 U.S.C. § 523(a)(8). The parties, however, stipulated in the pretrial order that the "unconscionability" standard set forth in the HEAL statute, 42 U.S.C. § 292f(g) applied to the determination of the dischargeability of the HEAL loan. Final Pretrial Order at 11, ¶ 21, *in* App., Vol. I, at 0076.

6. Since early 2001, Woody has been employed by the IRS. His initial employment with the IRS was seasonal. In August 2004, the IRS offered Woody full-time employment and he accepted. July 12, 2005, Transcript of Proceedings ("Tr.") at 14–15, *in* App., Vol. II, at 0242–0243.

7. Schedule C, *in* App. Appendix, Vol. II, at 0538.

8. Tr. at 131, *in* App., Vol. II, at 0359.

9. *Id.* at 134, *in* App., Vol. II, at 0362.

On December 15, 2005, the bankruptcy court issued a memorandum opinion and order supplementing its oral findings and conclusions.[10] The bankruptcy court concluded that "[Woody] has satisfied his burden and is entitled to discharge, in their entirety, [of] both the 523 Loan and the HEAL Loan."[11] The bankruptcy court noted that upon further consideration, a partial discharge of the HEAL loan was inappropriate since the nondischarge of any portion of the HEAL loan would be unconscionable under the facts and circumstances of the case.

On December 22, 2005, judgment in favor of Woody was entered in both adversary cases. Creditors timely appealed to this Court the bankruptcy court's final Judgment in favor of the debtor.

## II. *Discussion*

### A. *The 523 Loan*

#### 1. *Standard of Review*

 A decision that repayment of student loans constitutes an undue hardship is a question of law subject to *de novo* review.[12] The underlying factual determinations, however, must be accepted unless they are clearly erroneous.[13] "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[14]

#### 2. *Merits* [15]

Section 523(a)(8) excepts from the Chapter 7 discharge any debt "for an educational ... loan made, insured, or guaranteed by a governmental unit," "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents ...."[16] That Woody's student loan debt owed to the DOE falls within this section is undisputed. The only issue on appeal is whether the bankruptcy court erred in concluding that excepting the debt from discharge under § 523(a)(8) would impose an "undue hardship."

 The phrase "undue hardship" is not defined in the Bankruptcy Code. As correctly noted by the bankruptcy court, the Tenth Circuit in *Educational Credit Management Corp. v. Polleys*,[17] adopted, with some limitations, a test originally established by the Second Circuit in *Brunner v. New York State Higher Education Services Corp.*[18] for determining whether repayment of student loans imposes an "undue hardship" within the meaning of § 523(a)(8). Under the *Brunner* test, the debtor must prove by a preponderance of the evidence:

---

**10.** *Woody v. U.S. Dep't of Justice (In re Woody)*, 335 B.R. 431 (Bankr.D.Kan.2005).

**11.** Memorandum Opinion and Order Supplementing Oral Findings and Conclusions ("Opinion") at 25, *in* App., Vol. I, at 215.

**12.** *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1305 (10th Cir.2004).

**13.** *Id.*

**14.** *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

**15.** As part of its research, this court reviewed Rafael I. Pardo & Michelle R. Lacey's law review article, *Undue Hardship in the Bankruptcy Courts: An Empirical Assessment of the Discharge of Educational Debt*. 74 U. Cin. L.Rev. 405 (Winter 2005). This article provides a comprehensive analysis of the section 523(a)(8) issues and the history of the undue hardship exception.

**16.** 11 U.S.C. § 523(a)(8).

**17.** 356 F.3d 1302 (10th Cir.2004).

**18.** 831 F.2d 395 (2d Cir.1987).

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; .

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the loans.[19]

A student loan debt is nondischargeable under § 523(a)(8) if the debtor fails to show any one prong of this test.[20] The debtor bears the burden to demonstrate undue hardship.[21]

■ Although the Tenth Circuit adopted the *Brunner* framework, it expressly shunned "overly restrictive interpretation[s]" of the test that "deny discharge [of student loan debt] under even the most dire circumstances."[22] In the Tenth Circuit, therefore, courts have "discretion to weigh all the relevant considerations" within the framework of the *Brunner* test, applying the terms of the test "such that debtors who truly cannot afford to repay their loans may have their loans discharged."[23]

■ In *Polleys*, the Tenth Circuit clarified how a court should decide if the prongs are met. The first part of the *Brunner* test requires analysis of the debtor's current financial situation. It entails an analysis of all relevant factors, including the health, education, skill level and age of the debtor.[24] The second part of the *Brunner* test requires "a realistic look ... into [the] debtor's circumstances and the debtor's ability to provide for adequate shelter, nutrition, health care, and the like."[25] Further, "courts should base their estimation of a debtor's prospects on specific articulable facts, not unfounded optimism, and the inquiry into future circumstances should be limited to the foreseeable future, at most over the term of the loan."[26] The third part of the *Brunner* test requires consideration of whether the debtors are acting in good faith in seeking the discharge, or whether they are intentionally creating their hardship.[27] The Tenth Circuit cautioned that the good-faith requirement "should not be used as a means for courts to impose their own values on a debtor's life choices."[28]

On appeal, Creditors contend that Woody did not carry his burden of proving any of the three prongs. We disagree. The bankruptcy court applied the correct test and made factual findings to support its conclusion that each prong has been met.

With respect to the first prong, maintenance of a minimal standard of living, the bankruptcy court found that even without paying the 523 loan, Woody barely maintains a minimal standard of living. The bankruptcy court found: (1) Woody's current monthly expenses ($1901) exceeded his currently monthly net income ($1856); (2) it is highly unlikely his income will

19. *Brunner*, 831 F.2d at 396, *quoted in Polleys*, 356 F.3d at 1307.

20. *Polleys*, 356 F.3d at 1307.

21. *In re Woodcock*, 45 F.3d 363, 367 (10th Cir.1995).

22. *Polleys* at 1308.

23. *Id.* at 1309.

24. *Id.* at 1309–1310.

25. *Id.* at 1310.

26. *Id.* (internal quotation marks omitted).

27. *Id.*

28. *Id.*

increase materially, either by promotion or other means, over the amount he is now earning; (3) Woody's projected expenses (*i.e.*, gas consumption, monthly car payments, and medical) are too low and fail to account for day-to-day cost of living and unexpected expenses (*i.e.*, costs of replacing an automobile); (4) Woody's "voluntary" expenses for storage, union dues, retirement contributions, and loan repayment, are not excessive or unnecessary in maintaining a minimal standard of living; (5) Woody's "voluntary" expense, in reality, will be redirected toward paying for the higher than projected costs of auto repairs/replacement and gas prices; and (6) any garnishment of Woody's earnings, whether 10% or 25% of his earnings, to repay the student loan debt would deprive Woody of the ability to maintain a minimal lifestyle with his current level of income.

As to the second prong, whether additional circumstances exist to indicate that his state of affairs is likely to persist, the bankruptcy court found "[w]ith his work history, current age, and state of health, [Woody's] prospect for increased salary is negligible." The bankruptcy court stated that Woody's credible testimony reflects that it is highly unlikely his income will increase materially. In addition, the bankruptcy court noted that Woody is not in good health for he suffers from heart disease and endures the medical problems associated with a recent heart attack.

As to the third prong, Woody's good faith, the bankruptcy court concluded that Woody has demonstrated good faith despite his failure to make any voluntary payments toward the 523 Loan. The bankruptcy court found: (1) Woody has not contrived to create a hardship; (2) when healthy, Woody has continually sought full-time employment and has worked through temporary agencies when no other full-time work could be found; (3) Woody has minimized his expenses as evidenced by his budget; (4) Woody has maximized his earning potential in that he has sought and held a job throughout his working life and currently holds a position that utilizes his skills in accounting; (5) Woody has maximized his income by contributing to a flexible spending account; (6) Woody has had conversations with loan representatives, although sporadic, which indicates his good faith intent to cooperate and desire to repay his student loans, although he was unable to do so because of unemployment or insufficient income; and (7) there is no indication that Woody is attempting to abuse the student loan system by having his loans forgiven before embarking on a lucrative career in the private sector.

At first blush, it appears Creditors do not dispute the bankruptcy court's factual findings since many of the facts were stipulated and those that were not, are largely undisputed.[29] When the bankruptcy court's factual findings are undisputed, we review *de novo* whether the facts support a finding that an undue hardship does exist.[30] Creditors' arguments on appeal, however, to some extent attack the bankruptcy court's factual findings.[31] Thus, we

---

29. Consolidated Brief of Appellants at 7.

30. *See Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete)*, 412 F.3d 1200, 1204 (10th Cir. 2005).

31. For instance, Creditors challenge the bankruptcy court's factual finding that it is unlikely Woody's income will materially increase. Creditors, however, claim the evidence demonstrates that Woody's salary will continue to increase in the future. The Court notes that it is sometimes difficult to separate "findings of fact" from "conclusions of law" when the matter involves mixed fact and law. Moreover, Creditors likely tailored their argument to attack the bankruptcy court's conclusions instead of its factual findings in order to avoid the more difficult "clearly erroneous" standard of review.

must review under the clearly erroneous standard the bankruptcy court's resolution of any factual disputes that are relevant to the test. We then review under the *de novo* standard the bankruptcy court's ultimate conclusion whether an "undue hardship" has been shown.

Creditors contend that the bankruptcy court erred in concluding that Woody met the first *Brunner* prong and could not maintain a minimal standard of living if forced to repay his 523 loan for the following reasons: (1) it improperly assumed the role of advocate for the debtor when it found that he understated his expenses despite the fact that his testimony and schedules actually established those expenses; (2) it presumed that Woody would retire at age 65 or soon thereafter; (3) it failed to consider that Woody has no dependents in its analysis of his circumstances; (4) it incorrectly described Woody as reaching the pinnacle of his earning potential; (5) it failed to find that the elimination of expenses for storage of worthless furniture, repayment of a loan from his mother, and contribution to his retirement would allow Woody to comfortably repay his student loans; and (6) it misunderstood the extent Creditors could offset Woody's social security benefits to repay the student loans.

Next, Creditors contend that Woody failed to satisfy the second prong of the *Brunner* test because the bankruptcy court did not take a "realistic look" at Woody's circumstances and did not base its findings on "specific articulable facts" that are consistent with Woody's overall financial situation which has improved substantially over the past two years.[32] Creditors argue that Woody's past health problems are not an additional circumstance that satisfies the second *Brunner* prong.

Creditors likewise argue that Woody failed to establish good faith efforts to repay the debt as required by the third prong of the *Brunner* test. Creditors claim that the bankruptcy court generously construed the evidence regarding Woody's cooperation with his lenders and state there is no evidence of any meaningful effort to repay his student loan. Moreover, Woody's decisions to pay for life insurance, store worthless furniture for $125 a month for the last 12 years, and work temporary or seasonal jobs from 1983 to 2001 are "life choices" which indicate he did not maximize his income and minimize his expenses.

We have reviewed the bankruptcy court's decision *de novo* and have considered the testimony and other evidence adduced at trial, as well as all of the pleadings and filings of the parties. Based upon this review, we find that Creditors' arguments lack merit, and that the decision discharging the 523 loan should be affirmed.

Creditors' contention that the bankruptcy court improperly assumed the role of advocate for the debtor when it weighed the reasonableness of his scheduled expenses is without merit. As the bankruptcy court correctly stated, it is within the province of the court to account for over- and understatements of scheduled expenses. Moreover, contrary to Creditors' contention, Woody testified that (1) he anticipated that his vehicle will have to be replaced sometime within the next year or so, (2) he failed to budget for unexpected or emergency expenses, (3) he anticipated increased medical costs due to problems with his foot/ankle and his hands, and (4) his transportation costs should be higher as gas prices continue its upward trend and the distance he has to travel to

32. Consolidated Brief of Appellants at 24.

work will increase due to relocation of his workplace.

■ Creditors' contention that a person's desire to retire at age 65 should not be considered a basis for discharging student loan debt is unpersuasive. It is not Woody's desire to retire at age 65 which drives the bankruptcy court's analysis, but Woody's age. Age is a relevant factor to be considered in the *Brunner* analysis. A person in the his 20s or 30s will certainly have more opportunities to improve their earnings than a person in his late 50s or 60s. In addition, deteriorating health often accompanies old age, which in turn affects the ability to work and increases expenses. The findings are supported by the evidence.

■ Creditors take issue with the bankruptcy court's description of Woody as a man who has reached the pinnacle of his earning potential. Creditors claim the evidence indicates Woody just received a raise and could also earn overtime. The record, however, reflects that Woody will not receive a major raise unless he is promoted to management, which Woody testified he did not foresee happening in the future. With respect to overtime, given Woody's age and recent heart attack, it was not clearly erroneous for the bankruptcy court to find that Woody could not work more than 40 hours without suffering adverse health effects. Woody testified that his health and energy have been diminishing over time and that he does not have the energy to work overtime despite his best intentions.[33] Creditors argue that the evidence presented by Woody was out-

dated, referencing a medical report issued in April 2003. Essentially, Creditors argue that the bankruptcy court's findings of fact were against the weight of the evidence and the bankruptcy court did not accord the proper weight to the evidence. Creditors urge us to reverse based on their interpretation of the evidence. That we cannot do. We must accept the bankruptcy court's determination unless " 'that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.' "[34] We have carefully considered the record and the arguments presented and do not find the bankruptcy court's findings of fact clearly erroneous regarding Woody's earning potential.

■ Likewise, contrary to Creditors' assertion, the bankruptcy court's finding regarding the reasonableness of Woody's budget to maintain a minimal standard of living is not clearly erroneous. Expenses toward storage of worthless furniture and contribution toward his retirement are offset by Woody's understatement of expenses for lodging, transportation, medical, and other inevitable life expenses. In addition, retirement contributions, under these circumstances, are necessary for the maintenance of a minimal standard of living.[35]

Finally, it is irrelevant whether the bankruptcy court misunderstood the extent Creditors could offset Woody's social security benefits and that the right to off-

---

33. Tr. at 29–30, *in* App., Vol. II, at 257–258.

34. *In re Mama D'Angelo, Inc.*, 55 F.3d 552, 555 (10th Cir.1995) (quoting *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir.1972)).

35. *See Allen v. Am. Educ. Servs. (In re Allen)*, 329 B.R. 544, 552 n. 3 (Bankr.W.D.Pa.2005)

(Retirement contributions, reasonable in amount, are allowable within the context of an undue hardship analysis when debtor is fairly close to retirement, has not thus far saved anything for retirement, and is not likely to improve his earning ability such that he could otherwise save for retirement.).

set is limited to 15%. The bankruptcy court concluded that any garnishment, whether 10 or 25%, would deprive Woody of the ability to maintain a minimal lifestyle. After carefully considering the record and the arguments, we do not find the bankruptcy court's findings of fact clearly erroneous with respect to the first *Brunner* prong. It was not an abuse of discretion to find that Woody has met his burden here.

As to the second part of the *Brunner* test, the bankruptcy court found "[w]ith his work history, current age, and state of health, Mr. Woody's prospect for increased salary is negligible." [36] By listing these factors, the bankruptcy court provided specific articulable facts that support its conclusion. We hold that, based on these factual findings, the bankruptcy court did take a realistic look at Woody's circumstances. The record reflects that Woody was utilizing his accounting degree. He was fifty-eight years old at the time of the bankruptcy court's decision and thus has a limited work life. He has maximized his income working for the IRS. While his earnings may increase through cost of living increases and occasional "step" raises, it will be offset by the increase in his medical and other expenses required to maintain a minimal standard of living. Finally, contrary to Creditors' assertion, Woody's heart condition is not a "past health problem." He suffers from the after-effects of a heart attack and has foot/ankle and hand problems. Each of these circumstances indicates that Woody's state of affairs is likely to persist. Accordingly, the bankruptcy court's finding that Woody satisfied the second prong of the *Brunner* test is not clearly erroneous.

Last, we examine Creditors' claim that the bankruptcy court erred in concluding that the third part of the *Brunner* test has been satisfied. Although Woody and Creditors are in disagreement as to whether Woody cooperated with his student loan lenders, the record is clear that Woody is not attempting to abuse the student loan system by having his loans forgiven before embarking on a lucrative career in the private sector, and that his past and current income was and is insufficient to support payments toward his student loans. These facts, coupled with evidence that Woody maximized his earning potential by seeking and holding positions throughout his working life that utilize his skills in accounting, maximized his income by contributing to a flexible spending account, and minimized his expenses by living a meager lifestyle, establishes that the bankruptcy court's finding that Woody satisfied the third factor of the *Brunner* test is not clearly erroneous.

After reviewing the evidence and testimony in this case and after carefully considering the arguments raised by Creditors, we simply are not left with a definite and firm conviction that a mistake has been committed by the bankruptcy court. As a result, the bankruptcy court's conclusion that the 523 loan was dischargeable is not clearly erroneous. The decision of the bankruptcy court discharging the 523 loan pursuant to 11 U.S.C. § 523(a)(8) is AFFIRMED.

### B. The HEAL Loan

#### 1. Standard of Review

 The determination of the meaning of "unconscionable" constitutes a question of law reviewed *de novo*.[37] Application of the unconscionability standard to

---

**36.** Opinion at 13, *in* App., Vol. I, at 203.

**37.** *U.S. Dept. of Health and Human Servs. v. Smitley*, 347 F.3d 109, 115 (4th Cir.2003).

the facts of a case constitutes a mixed question of law and fact, requiring a conclusion regarding the legal effect of the bankruptcy court's findings as to the debtor's circumstances.[38] Mixed questions of law and fact are reviewed under a hybrid standard, applying the clearly erroneous standard of review to factual findings and examining *de novo* the legal conclusions derived from those facts.[39]

### 2. *Merits*

 Discharge of a HEAL loan is governed by 42 U.S.C. § 292f(g), which provides that:

Notwithstanding any other provision of Federal or State law, a debt that is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy under any chapter of Title 11, only if such discharge is granted—

(1) after the expiration of the seven-year period beginning on the first date when repayment of such loan is required, exclusive of any period after such date in which the obligation to pay installments on the loan is suspended;

(2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; and

(3) upon the condition that the Secretary [of Health and Human Services] shall not have waived [certain rights].

The sole question before the bankruptcy court was whether the nondischarge of Woody's HEAL loan would be unconscionable under § 292f(g).

Creditors claim that the bankruptcy court correctly recognized the judicially-established standards and criteria for determining unconscionability, but failed to correctly apply those standards when it discharged Woody's HEAL loan.[40] Creditors argue that the bankruptcy court's interpretation of "unconscionability" is inconsistent with its plain meaning and established case law. We disagree.

Section 292f(g) does not define the term "unconscionable," and the Tenth Circuit has not addressed the question in a published opinion. The Supreme Court has directed, however, that "[i]n the absence of an indication to the contrary, words in a statute are assumed to bear their 'ordinary, contemporary, common meaning.' "[41] The dictionary defines "unconscionable" as "excessive;" "exorbitant;" "lying outside the limits of what is reasonable or acceptable;" "shockingly unfair, harsh, or unjust;" or "outrageous."[42] Attempts to further define the standard have not succeeded in developing a straightforward test. As described in *Hines v. United States (In re Hines)*,[43] "unconscionability is likened to beauty in that it appeals to the senses and is found in the eyes of the beholder." Therefore, its "precise definition . . . is better left to the discretion of the Bankruptcy Judge."[44]

 The bankruptcy court, noting that "unconscionable" should be given its plain meaning of excessive, exorbitant, lying outside the limits of what is reasonable or

---

**38.** *Id.*

**39.** *Id.* at 116.

**40.** Consolidated Brief of Appellants at 33.

**41.** *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 207, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997) (citation omitted).

**42.** *Webster's Third New International Dictionary* 2486 (1993).

**43.** 63 B.R. 731, 736 (Bankr.D.S.D.1986).

**44.** *Id.*

acceptable, shockingly unfair, harsh, or unjust, or outrageous, and that the standard imposed by this definition is more stringent than the "undue hardship" standard imposed by § 523(a)(8), summarized the analysis courts should utilize in determining the dischargeability of HEAL loans as follows:

> In an "unconscionability" analysis, a court should look to the plain meaning of the word "unconscionable" in determining whether, within the totality of the circumstances, nondischarge of a HEAL obligation is appropriate. A court should look to factors used by other courts for guidance in examining the totality of the circumstances, but should avoid employing the factors as a rigid, formula-driven calculation. Weight should be given to a debtor's good faith, or lack thereof. In addition, a court should consider the likely consequences nondischarge of a HEAL obligation will have on the debtor and whether those consequences will adversely affect the debtor's ability to maintain a minimal standard of living into the foreseeable future.[45]

Factors to consider include (1) the debtor's income, earning ability, health, educational background, dependents, age, accumulated wealth and professional degree; (2) the debtor's standard of living, with a view toward ascertaining whether the debtor has attempted to minimize the expenses of himself and his dependents; (3) whether the debtor's current situation is likely to continue to improve, including whether the debtor has attempted to maximize his income by seeking or obtaining stable employment commensurate with his educational background and abilities; (4) whether the debtor could supplement his income through secondary part-time or seasonal work, even if already employed full time; (5) whether the debtor's dependents are or could be contributing financially to their own support; (6) the amount of the debt and the rate of interest; and (7) the debtor's role in accruing the amount of debt, including requesting multiple forbearances and making minimal repayments.[46]

Following this framework, the bankruptcy court incorporated its findings concerning the dischargeability of the 523 loan, as they are equally applicable under the "unconscionability" analysis, and revisited a number of factors with specific regard to the unconscionability analysis. The bankruptcy court found that Woody's gross income was insufficient to maintain even a minimal standard of living if he were forced to repay his HEAL loan. The bankruptcy court concluded that depriving Woody of the ability to afford life's basic necessities, such as health care, transportation, food, housing, utilities, or even the ability to care for one's self upon impending retirement would be unconscionable.

■ Creditors claim Woody's circumstances cannot approach, much less meet, the burden of establishing unconscionability. Creditors argue that the nondischarge of a HEAL loan has only been deemed unconscionable when the debtor demonstrates that he or she is permanently unable to engage in any type of gainful employment. This is not accurate. In *Soler v. United States (In re Soler)*,[47] the bankruptcy court granted discharge of a HEAL loan to a dentist, earning approximately $79,000 per year, working 36–hours per week. The court, after examining the totality of facts and circumstances, found the nondischarge of one of her HEAL loans would be unconscionable considering the debtor's significant repayment efforts, she

---

**45.** *In re Woody,* 335 B.R. at 447.

**46.** *Smitley,* 347 F.3d at 117–118.

**47.** 261 B.R. 444 (Bankr.D.Minn.2001).

was earning the most she could using her degree and skills, she was working the maximum number of hours recommended by her treating doctor despite her chronic, acute back pain, and she was minimizing her expenses and living a frugal existence. As we have previously noted, there is no straightforward test. While a court should look to factors used by other courts for guidance in examining the totality of the circumstances, it should avoid employing the factors as a rigid, formula-driven calculation.

Creditors also claim that the bankruptcy court improperly based its finding of unconscionability upon speculation that Woody would be unable to save sufficient income for retirement. First, that was not the sole basis for the bankruptcy court's findings. Second, contrary to Creditors' assertion, that is not an improper basis upon which to analyze unconscionability. As part of its analysis, the court must consider whether Woody's state of affairs is likely to persist and thus requires inquiry into the foreseeable future. Given Woody's age and health problems, his retirement is inevitable. Retiring, of course, in turn affects his income and ability to repay the loan. What he contributes into retirement now will increase his income later.

After reviewing the evidence and testimony in this case and after carefully considering the arguments raised by Creditors on appeal, we simply are not left with a definite and firm conviction that a mistake has been committed by the bankruptcy court.[48] Congress created the "unconscionable" standard for use with HEAL loans to prevent a borrower who obtains a medical degree with a HEAL loan and is on the threshold of a prestigious, high paying medical career, from easily discharging the HEAL loan in bankruptcy.[49] Woody does not fit this profile.

The record reflects that Woody incurred his HEAL loan in 1982, but he never received a chiropractic degree. Woody filed for bankruptcy approximately 20 years later, but only after incurring significant medical bills as a result of the heart attack.

The record also reflects that Woody struggled and continues to struggle to make ends meet. He continually sought employment and even took temporary positions when permanent ones were unavailable. He lives on a tight budget. His health, while currently stable, is that of a man who suffers from heart disease and a recent heart attack. He also has foot and hand problems. Given his health condition, he cannot work more than 40 hours per week without suffering adverse health effects. These facts, combined with his age, support the bankruptcy court's finding that he has maximized his earnings and minimized his expenses.

■ As for good faith in repaying the HEAL loan, Creditors base their lack of good faith argument on the minimal amount of payments made by Woody. Failure to make a payment, standing alone, does not establish a lack of good faith.[50] We agree with the bankruptcy court that Woody's failure to make more payments was justified because, despite reasonable efforts on his part, he was unable to earn income sufficient to reasonably warrant any attempt at repayment. Because Woody's lifestyle is modest and unremarkable and he has maximized his income by fully utilizing his accounting degree, the bankruptcy court's findings regarding unconscionability are not clearly erroneous.

---

48. *See* discussion, *supra,* regarding *Brunner* prongs.

49. *Soler,* 261 B.R. at 463.

50. *Polleys,* 356 F.3d at 1311.

## III. *Conclusion*

For the reasons set forth, we AFFIRM the bankruptcy court.