**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRED FICHMAN,
        *Plaintiff-Appellant,*

v.

MEDIA CENTER,
        *Defendant-Appellee.*

No. 05-16653

D.C. No.
CV-04-00104-HDM

OPINION

Appeal from the United States District Court
for the District of Nevada
Howard D. McKibben, District Judge, Presiding

Submitted October 19, 2007*
San Francisco, California

Filed January 14, 2008

Before: Jane R. Roth,** Sidney R. Thomas, and
Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Thomas

---

*The panel unanimously finds this case suitable for decision without oral argument.

**The Honorable Jane R. Roth, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

429

## COUNSEL

Jeffrey A. Dickerson; Reno, Nevada, for the appellant.

Gary A. Cardinal and Brent L. Ryman; Erickson, Thorpe & Swainstone, Ltd.; Reno, Nevada, for the appellee.

## OPINION

THOMAS, Circuit Judge:

This appeal presents the question of whether directors of a nonprofit organization or independent volunteer producers may be considered employees within the meaning of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12,101 *et seq*. We conclude that they may not, and we affirm the district court's grant of summary judgment holding that the nonprofit corporation does not have a sufficient number of employees to be considered an "employer" within the meaning of the statutes.

I

The Cable Communications Policy Act of 1984, Pub. L. No. 98-549, 98 Stat. 2779 (1984), authorizes local governments' cable franchising authorities to require cable operators

to set aside cable channels for "public, educational or governmental use." 47 U.S.C. § 531(a). These channels, typically called "PEG" or "Community Access" channels, are often operated by nonprofit organizations. Community Access operators allow citizens and local organizations to produce their own television shows for broadcast. Community Access channels also typically broadcast local governmental meetings and other community events.

Sierra Nevada Community Access Television, Inc. d/b/a The Media Center ("Media Center") is an independent, nonprofit 501(c) corporation established in 1991. It operates a Community Access Channel in Reno and Sparks, Nevada. Like most Community Access Channel operators, Media Center broadcasts local government meetings and programming supplied by independent producers.

Fred Fichman served as Executive Director of Media Center from July 8, 2002 until he was terminated from the position on December 1, 2003. During that period, Media Center did not have fifteen or more paid employees except for one two-week span of time. During that period, there were approximately eighty independent producers who supplied broadcast content, but received no compensation from Media Center. Also during that period, Media Center was governed by a nine-member Board of Directors, the members of which were not compensated by Media Center.

After his termination, Fichman sued Media Center, alleging violations of the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"), and asserting a state law tort claim of intentional infliction of emotional distress.

The district court granted Media Center's motion for summary judgment, holding that it lacked subject matter jurisdiction because Media Center employed fewer than the twenty employees necessary for an employer to be governed by the

ADEA, 29 U.S.C. § 630(b), and fewer than the fifteen employees necessary for an employer to be governed by the ADA, 42 U.S.C. § 12,111(5)(A). The court declined to exercise supplemental jurisdiction over the state law claim. Fichman timely appealed.

We review the district court's decision to grant summary judgment *de novo*. *Qwest Commc'ns Inc. v. City of Berkeley*, 433 F.3d 1253, 1256 (9th Cir. 2006). Thus, viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004).

II

The district court properly granted summary judgment on Fichman's ADEA and ADA claims. The issue on appeal is whether Fichman has raised a genuine issue of fact as to whether Media Center employed a sufficient number of employees to be an "employer" governed by the ADEA or the ADA. The ADEA, which limits age discrimination in employment, applies only to an entity "engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ." 29 U.S.C. §§ 623, 630(b). The ADA, which limits employment discrimination against individuals with disabilities, applies only to an entity "engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year . . . ." 42 U.S.C. § 12,111(5)(A).

Although the parties have not established a baseline number of employees unquestionably employed by Media Center for the requisite number of weeks, neither party denies that if Media Center's directors or the independent producers are

Media Center employees, then Media Center is an employer for purposes of both the ADEA and the ADA. Conversely, if none of the directors, producers, or three additional individuals identified by Fichman are Media Center employees, Media Center is not an employer for the purposes of either act. Because Fichman has not raised a genuine issue of fact as to whether Media Center employs the requisite number of employees required for ADA or ADEA coverage, we affirm the district court's grant of summary judgment.

## A

**[1]** The district court correctly held that members of the Media Center Board of Directors could not be counted as employees under the ADA and ADEA. This question is governed by the United States Supreme Court's analysis in *Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440 (2003). In *Clackamas*, the Court addressed whether physicians that were also directors and shareholders of a clinic were employees for purposes of the ADA. The Court noted that Congress had intended the word "employee" to describe "the conventional master-servant relationship as understood by common-law agency doctrine." *Id.* at 445 (internal quotation marks and citation omitted). The Court then described six factors relevant to determining whether a director is an employee:

- Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work

- Whether and, if so, to what extent the organization supervises the individual's work

- Whether the individual reports to someone higher in the organization

- Whether and, if so, to what extent the individual is able to influence the organization

- Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts

- Whether the individual shares in the profits, losses, and liabilities of the organization.

*Id.* at 449-50. The Court noted that these factors were not exhaustive, and that whether an individual is an employee depends on "all of the incidents of the relationship[,] with no one factor being decisive." *Id.* at 450 n.10, 451 (internal quotation marks and citation omitted).

**[2]** Under *Clackamas*, the district court properly concluded that the members of the Board of Directors were not Media Center employees. Media Center does not hire or fire its directors: the Board selects its own members. The directors each have full-time jobs independent of Media Center, and are not compensated by Media Center. Neither the travel reimbursement nor the food supplied at Board meetings rises to the level of compensation. The personal satisfaction and professional status several directors reported gaining from their positions with Media Center are typical benefits of volunteer work.

**[3]** Nor does Media Center supervise or regulate the directors' work. Directors do not share in the day-to-day responsibilities of Media Center staff, but rather spend approximately two to four hours a month on Media Center work. The Board is governed by bylaws that the Board itself adopts. The Board generally operates as a democracy. That the Board has created a system of self-governance does not place any individual director in the position of subservience contemplated by the conventional master-servant relationship.

**[4]** The directors do not report to someone higher in the organization in any traditional way. The different committees of the Board report back to the Board, but the reports are not

those made to a chief executive officer. Rather, the committees report as advisors on particular subjects. The Board as a whole acts as the ultimate supervisor: the Executive Director must get the Board's approval for budgets and large expenditures.

**[5]** Because of their advisory and supervisory function, the directors are in a position to influence Media Center. The Board sets policy and makes recommendations to the Executive Director. The Executive Director implements the Board's recommendations.

**[6]** Likewise, the parties' intent supports the conclusion that the directors are not employees. In their depositions, the directors stated that they consider themselves volunteers, not employees. Fichman did not produce employment agreements or any testimony that would contradict this statement or suggest that Media Center intended otherwise.

**[7]** The last factor — whether the individual shares in the profits, losses, and liabilities of the organization — may not be appropriate to the non-profit setting. Media Center did maintain officers' and directors' liability insurance so that the directors would not be exposed to liability because of their work with Media Center. This was the only insurance coverage (or other type of traditional "benefit") the directors received.

**[8]** In sum, the district court correctly concluded that there was no genuine issue of material fact as to whether the directors may be treated as Media Center employees for the purposes of the ADA.

**[9]** Most courts consider the definition of "employee" to be uniform under federal statutes where it is not specifically defined, including the ADEA and ADA. *See, e.g.*, *EEOC v. Johnson & Higgins*, *Inc.*, 91 F.3d 1529, 1537-40 (2d Cir. 1996) (relying on cases defining "employee" for purposes of

the ADEA and Title VII in evaluating age discrimination claim). Therefore, although *Clackamas* only involved the ADA, we see no basis for applying a different analytical framework to the ADEA claim. Accordingly, we conclude that the district court also properly concluded that the directors were not Media Center employees for purposes of the ADEA claim.

B

**[10]** The district court also correctly concluded that the independent producers were not employees under the ADA and ADEA. Fichman produced no evidence of a traditional employer-employee relationship, or master-servant relationship, between Media Center and the television and radio producers. Indeed, one of the animating ideas behind the creation of PEG channels was to provide an electronic " 'soapbox' channel on which anyone would be able to appear on the medium and communicate his ideas to the system's subscribers." 2 *Ferris & Lloyd, Telecommunications Regulation: Cable, Broadcasting, Satellite, and the Internet* (Matthew Bender 2004) ¶15.01, p. 15-3. Local producers submit video for broadcast on the channel. Typical programming includes fitness training, discussions about the arts, cooking classes, and the religious programming—all created by members of the public, or representatives of non-profit corporations, who wish to broadcast their own content on cable. Programming also may include eccentric productions of the sort satirized in "Wayne's World," a recurring television comedy sketch later adapted into a motion picture, in which a high school student offered weekly sardonic observations on life from the basement of his parent's home in Aurora, Illinois. *Wayne's World* (Paramount Pictures 1992); *cf. Mel Brooks, I want to be a Producer*, on *The Producers: Original Broadway Cast Recording* (Sony Music International, Inc. 2001) ("I have a secret desire/Hiding in my soul/To see me in this role/I wanna be a producer.").

**[11]** The producers pay for Media Center classes through which they can become certified to use Media Center facilities. Once certified, they receive minimal supervision while using the facilities. Producers are required to sign a contract and agree to indemnify Media Center against any liability. The contract does not define the relationship as employer-employee. There is no prohibition against non-local producers submitting videos, but the producers are required to have a local sponsor. A parental signature is required if the submitting producer is under the age of 18.

**[12]** Media Center does not have the power to hire or fire producers. It does not supervise them in a traditional employer-employee manner. The producers are not paid a salary, nor are they entitled to employee benefits.

**[13]** Given these undisputed facts, the district court correctly held that the independent program producers could not be counted as employees within the meaning of the ADA or ADEA. Neither the serious members of the public who provide programming content to Media Center, nor the aspiring Wayne Campbells of northern Nevada, qualify as Media Center employees.

## C

**[14]** The district court did not err in determining that, in counting only the true employees as defined in the ADA and ADEA, Media Center did not meet the statutory minimum under either act. The Supreme Court has determined that the "ultimate touchstone" is "whether an employer has employment relationships with fifteen or more individuals" (at a minimum) for the requisite number of weeks, and has acknowledged that the employer's payroll is evidence of these relationships. *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 211-12 (1997).

**[15]** The district court examined and considered Media Center's payroll evidence and related declarations establish-

ing that there was only one two-week period over the relevant two years in which Media Center employed fifteen employees. Fichman contends that these records reflect an inaccurate count of Media Center employees. However, even after the district court afforded him time to tender evidence that would create a genuine issue of material fact, he failed to present evidence that the payroll records were faulty or provide affirmative evidence of an employment relationship between Media Center and any other person not listed in the payroll records. Therefore, the district court did not err in granting summary judgment on the ADA and ADEA claims.

### III

**[16]** In sum, the district court properly held that members of the Board of Directors and independent producers could not be considered "employees" within the meaning of the ADA and ADEA. Fichman failed to raise a genuine issue of fact as to whether Media Center otherwise employed the requisite number of employees for the relevant period of time. Therefore, the district court correctly granted summary judgment on Fichman's claims under the ADEA and ADA. Having granted judgment on the federal claims, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over the state claims. 28 U.S.C. § 1367(c)(3); *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205-06 (9th Cir. 1991).

**AFFIRMED.**