**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DONALD SULLIVAN; DEANNA EVICH;
RICHARD BURKOW,
            *Plaintiffs-Appellants,*

v.

ORACLE CORPORATION, a Delaware
corporation; ORACLE UNIVERSITY,
form unknown,
            *Defendants-Appellees.*

No. 06-56649

D.C. No.
CV-05-00392-AHS

OPINION

Appeal from the United States District Court
for the Central District of California
Alicemarie H. Stotler, District Judge, Presiding

Argued and Submitted
May 6, 2008—Pasadena, California

Filed November 6, 2008

Before: William A. Fletcher and Ronald M. Gould,
Circuit Judges, and Louis H. Pollak,*
United States District Judge.

Opinion by Judge William A. Fletcher

*The Honorable Louis H. Pollak, Senior United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.

**COUNSEL**

Charles Scott Russell, Robert Thompson, Callahan McCune & Willis, Tustin, California, for the appellants.

Stephen L. Berry, Paul W Cane, Jr., Paul, Hastings, Janofsky & Walker, Costa Mesa, California, for the appellees.

**OPINION**

W. FLETCHER, Circuit Judge:

Oracle Corporation ("Oracle"), a large software company, has employed hundreds of workers to train Oracle customers in the use of its software. During the period relevant to this suit, Oracle classified these workers as teachers who were not entitled to compensation for overtime work under either federal or California law. Three nonresidents of California brought a would-be class action against Oracle seeking damages under California law for failure to pay overtime. Plaintiffs performed only some of their work for Oracle in California. Plaintiffs' first two claims are based on work performed in California. Their third claim is based on work performed anywhere in the United States.

The district court granted summary judgment to Oracle on all three claims, on the ground that the relevant provisions of California law did not, or could not, apply to the work performed by Plaintiffs. We reverse the summary judgment on the first two claims and affirm on the third claim.

## I. Background

Oracle is a Delaware corporation with its principal place of business in California. Plaintiffs are "Instructors" — to use Oracle's term — who trained customers to use Oracle soft-

ware. The parties stipulated that from April 1999 to June 2006 (the date of the stipulation) Oracle "utilized Instructors on a contract basis through its subsidiary, Oracle Corporation Canada, to perform work inside the United States [and] inside the State of California." Oracle provided the training materials used by Plaintiffs. Oracle "recognized revenue" for work performed by Plaintiffs in the United States (including California). Oracle "required its Instructors to travel to destinations within the United States away from their city of domicile for the purpose of performing work for Oracle." At all relevant times, all three plaintiffs resided in the United States. All three of them received their letters of employment in their home states.

Plaintiff Donald Sullivan worked as an Oracle Instructor from June 1998 to January 2004. During this period, Sullivan resided in Colorado. During 2001, Sullivan worked in Colorado "on at least 150 days"; he worked in California "on 32 days"; and he worked in other states "on at least" 52 days. During 2002, he worked in Colorado "on at least 150 days"; he worked in California "on 12 days"; and he worked in other states "on at least" 20 days. During 2003, he worked in Colorado "on at least 150 days"; he worked in California "on 30 days"; and he worked in other states "on at least" 19 days. The record does not reflect how many days, if any, Sullivan worked in Canada.

Plaintiff Deanna Evich worked as an Oracle Instructor from August 1999 to July 2004. During this period, Evich resided in Colorado. During 2001, Evich worked in Colorado "at least 150 days"; she worked in California "on 33 days"; and she worked in other states "on at least" 3 days. During 2002, she worked in Colorado "on approximately 30 days"; she worked in California "on 11 days." During 2003, she worked in Colorado "on approximately 30 days"; she worked no days in California. During 2004, she worked in Colorado "on at least 100 days"; she worked in California "on 36 days"; and she worked

in other states "on at least" 4 days. The record does not reflect how many days, if any, Evich worked in Canada.

Plaintiff Richard Burkow worked as an Oracle Instructor from March 1998 to April 2002. During this period, Burkow resided in Arizona. During 2001, Burkow worked in Arizona "on at least 100 days"; he worked in California "on 15 days"; and he worked in other states "on at least" 68 days. During 2002, he worked in Arizona "on at least 60 days"; he worked in California "on five days"; and he worked in other states "on at least" 12 days. The record does not reflect how many days, if any, Burkow worked in Canada.

For a number of years, Oracle classified its Instructors as "teachers," who are exempt from the overtime provisions of California's Labor Code ("Labor Code") and the federal Fair Labor Standard Act ("FLSA"). *See, e.g.*, 29 U.S.C. § 213(a)(1) (providing exemptions from the FLSA's overtime provisions); 29 C.F.R. §§ 541.303(a)-(b) (applying FLSA exemption to certain categories of teachers); *Cal. Sch. of Culinary Arts v. Lujan*, 4 Cal. Rptr. 3d 785, 791-92 (Ct. App. 2003) (describing regulations establishing exemption for teachers from the Labor Code's overtime provisions). The parties stipulated that Oracle's California offices were primarily responsible for the decision to classify the Instructors as "teachers" who were exempt from the overtime provisions of the Labor Code and the FLSA.

In 2003, Oracle reclassified its California-based Instructors and began paying them overtime under the Labor Code. In 2004, Oracle reclassified all of its Instructors working in the United States and began paying them overtime under the FLSA. Oracle has not retroactively provided overtime payments to Plaintiffs for the work they performed prior to the reclassification.

Oracle's reclassification of its Instructors appears to have been prompted by a 2003 class action in federal district court

for the Central District of California. Plaintiffs in that suit claimed that Oracle misclassified its Instructors under the Labor Code and the FLSA. *Gabel & Sullivan v. Oracle* ("*Sullivan I*"), Case No. SACV 03-348 AHS (MLGx) (C.D. Cal. Mar. 29, 2005). The district court certified two classes. The first was comprised of plaintiffs seeking damages under the Labor Code; the second was comprised of plaintiffs seeking damages under the FLSA. That suit was settled, resulting in a dismissal with prejudice of the claims of both classes. However, claims brought by plaintiffs under California law "for periods of time they may have worked in the State of California when they were not a resident of the State" were excepted from the settlement. Those claims were dismissed without prejudice.

Plaintiffs brought the present suit in state court shortly thereafter. Oracle removed the suit to the federal district court for the Central District of California, where it was assigned to the same district judge as *Sullivan I*, the first suit. Plaintiffs allege three claims in the present suit. They seek class certification for all three claims.

The first claim, brought by all three Plaintiffs, alleges a violation of the California Labor Code. *See, e.g.*, Cal. Lab. Code § 510(a); *see also Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1073 n.18 (9th Cir. 2007). Plaintiffs allege that Oracle failed to pay overtime for work performed in California to Instructors domiciled in other states who worked complete days in California. We refer to this claim as the "Labor Code claim."

The second claim, brought by all three Plaintiffs, alleges a violation of California's Unfair Competition Law, commonly referred to as § 17200. *See* Cal. Bus. & Prof. Code § 17200 *et seq*. This claim is predicated on the violations of the Labor Code alleged in the first claim. We refer to this claim as the "§ 17200/Labor Code claim."

The third claim, brought only by Plaintiffs Evich and Burkow, alleges a different violation of § 17200. This claim is predicated on violations of the FLSA. Plaintiffs allege that Oracle failed to pay overtime for work performed throughout the United States. Class members in *Sullivan I* who settled their claims against Oracle are not included in the would-be class. We refer to this claim as the "§ 17200/FLSA" claim.

The district court granted summary judgment to Oracle on all three claims. On the first and second claims, the court held that California's Labor Code (and, derivatively, § 17200) do not apply to nonresidents who work primarily in other states. Further, the court held that if the Labor Code were construed to apply to such work, it would violate the Due Process Clause of the Fourteenth Amendment. On the third claim, the court held that § 17200 does not apply to work performed outside California and that to the extent the third claim involved work performed in California, the claim failed "for the same reasons that Plaintiffs' § 17200 claim based on Labor Code provisions fails."

Plaintiffs timely appealed.

## II. Standard of Review

"We review the district court's decision to grant summary judgment de novo. Thus, viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Fichman v. Media Ctr.*, 512 F.3d 1157, 1159 (9th Cir. 2008) (internal citation omitted). "A district court's decision concerning the appropriate choice of law is reviewed de novo." *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000).

### III.  Discussion

### A.  Labor Code Claim

We must decide two questions under Plaintiffs' Labor Code claim. First, we must decide whether the overtime provisions of California's Labor Code apply to work performed in California by residents of Colorado and Arizona. Second, if the Labor Code does apply to such work, we must decide whether its application violates the United States Constitution.

### 1.  Application of California's Labor Code to Work Performed in California by Residents of Colorado and Arizona

**[1]** The California Labor Code provides that overtime must be paid for work in excess of eight hours in any one day, and for work in excess of forty hours in any one week. Plaintiffs seek to apply the Labor Code to a day's work when that work was performed entirely in California, and to a week's work when that work was performed entirely in California. They do not seek to apply the Labor Code to a day's or week's work when only part of that day's or week's work was performed in California. Oracle contends that the overtime provisions of Colorado law should apply to work performed in California by the two Colorado residents, Plaintiffs Sullivan and Evich. It contends that the overtime provisions of the FLSA should apply to work performed in California by the Arizona resident, Plaintiff Burkow. (Arizona has no overtime law of its own.)

**[2]** In determining what state law to apply, a federal court applies the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In this case, we therefore look to the choice-of-law rules of California. For the reasons that follow, we conclude that a California court, applying California choice-of-law rules, would apply California's Labor Code to Plaintiffs' suit.

In California (as in every other American jurisdiction) a court begins with the presumption that the applicable substantive rule is drawn from its own forum law. A California court will consider whether its substantive law should be displaced by the substantive law of another state or country if the party seeking the application of non-California law is able to "demonstrate that the latter rule of decision will further the interest of the foreign state and therefore it is an appropriate one for the forum to apply to the case before it." *Wash. Mut. Bank v. Superior Court*, 15 P.3d 1071, 1080 (Cal. 2001) (citations and internal quotation marks omitted). When such a demonstration is made, it becomes the court's obligation to assess the competing substantive rules of law and apply the one which, as it bears upon the issue before the court, the court determines to be the more appropriate of the two.

Under California choice-of-law rules, the analysis proceeds in three steps. First, the court must determine whether the California law and the potentially applicable law of another state are "materially" different. *Id.* As part of resolving this initial question, the court must determine whether each state's overtime provisions are intended to cover Plaintiffs' situations. If one state has overtime provisions that would apply to the pertinent situation and another state does not, then the applicable law in each state is materially different. *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 928 (Cal. 2006). Second, if the laws are materially different, the court must determine "what interest, if any, each state has in having its own law applied to the case." *Wash. Mut. Bank,* 15 P.3d at 1080. Even if there are materially different laws, "there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied." *Id.* at 1081. Third, if the laws are materially different and if each state has an interest in having its own law applied, the court must "take the final step and select the law of the state whose interests would be 'more impaired' if its law were not applied." *Id.*

a.   "Materially" Different

There are three potentially applicable laws. For Plaintiffs Sullivan and Evich, they are California and Colorado law. For Plaintiff Burkow, they are California and Arizona law. We must compare the substantive provisions of California law with the substantive provisions of Colorado law and Arizona law, and must then consider whether each of the laws was intended to apply to Plaintiffs' claim.

**[3]** We begin with California's overtime law. The California Labor Code provides:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

Cal. Lab. Code § 510(a). To summarize, this provision requires overtime pay of one and one-half times regular pay beyond 8 hours worked in any single day, 40 hours in one week, and the first 8 hours of work on the seventh day worked of any one workweek. Additionally, it requires double pay for hours worked beyond 12 in a day or 8 hours on the seventh day of any one workweek.

**[4]** Contrary to Oracle's assertions, the California Labor Code is clearly intended to apply to work done in California by nonresidents. The California Supreme Court has concluded

that California's employment laws govern *all* work performed within the state, regardless of the residence or domicile of the worker. In *Tidewater Marine Western, Inc. v. Bradshaw*, 927 P.2d 296, 301 (Cal. 1996), the Court wrote, "Like the criminal laws . . . , California employment laws implicitly extend to employment occurring within California's *state law* boundaries[.]" Oracle relies on two cases to argue that the Labor Code should not be construed to extend to Plaintiffs' work in California. We find Oracle's arguments unconvincing.

First, Oracle quotes a sentence from *Tidewater Marine*. The Court wrote, "If an employee resides in California, receives pay in California, and works exclusively, or principally, in California, then that employee is a 'wage earner in California' and presumptively enjoys the protection of . . . regulations [promulgated under the Labor Code]." *Id.* at 309. Oracle asks us to read into this sentence a negative inference that a non-resident is not a "wage earner" within the meaning of the Labor Code. But the status of a non-resident was not the issue in *Tidewater Marine*. Rather, the issue was whether California *residents* working outside California were covered by the Labor Code. The Court answered that they were covered.

To the degree that any inference can be drawn from *Tidewater Marine*, it is the opposite from that drawn by Oracle. Two sentences before the sentence quoted by Oracle, the Court speculated that the legislature "may not have intended" the Labor Code to apply to "*out-of-state businesses* employing nonresidents, though the nonresident employees enter *California temporarily during the course of the workday*." *Id.* (emphasis added). If the Court described an out-of-state employer's employees coming into California temporarily during the course of a workday as the marginal case for Labor Code coverage, there is an inference that an *in-state employer's* employees coming into California *for entire workdays and workweeks* is not a marginal case. That is, there is an inference that such a case comes within the Code's coverage.

Second, Oracle relies on *Campbell v. Arco Marine, Inc.*, 50 Cal. Rptr. 2d 626 (Ct. App. 1996). In *Campbell*, Plaintiff had sued her California-based employer for sexual harassment in violation of California's Fair Employment and Housing Act ("FEHA"). The Court of Appeal dismissed her complaint as not covered by FEHA. Oracle describes the Court as having held "that the action must be dismissed because the plaintiff was not a resident of California and worked in California only on a limited basis." That is not a fair description of the Court's holding. The actual words of the Court of Appeal were: "We hold that the FEHA was not intended to apply to non-residents where, as here, *the tortious conduct took place out of this state's territorial boundaries*." *Id.* at 628 (emphasis added). Even if we assume that the coverage of FEHA is congruent with the coverage of the Labor Code, *Campbell* does not support Oracle's argument. In our case, unlike in *Campbell*, the allegedly wrongful conduct took place inside rather than outside California.

**[5]** We next consider Colorado and Arizona law. The relevant Colorado minimum wage regulation provides:

> Overtime Rate: employees shall be paid time and one-half of the regular rate of pay for any work in excess of: (1) forty (40) hours per workweek; (2) twelve (12) hours per workday, or (3) twelve (12) consecutive hours without regard to the starting and ending time of the workday (excluding duty free meal periods), whichever calculation results in the greater payment of wages. Hours worked in two or more workweeks shall not be averaged for computation of overtime. Performance of work in two or more positions at different pay rates for the same employer shall be computed at the overtime rate based on the regular rate of pay for the position in which the overtime occurs, or at a weighted average of the rates for each position, as provided in the Fair Labor Standards Act.

7 Colo. Code Regs. § 1103-1(4). Unlike California law, this provision only requires one and one-half regular pay when an employee works more than 12 hours in a day or more than 40 hours in a week. Also unlike California law, Colorado law does not impose a double-pay requirement, as California law does in some instances, nor does it require any overtime pay for work on the seventh consecutive day.

**[6]** Arizona does not have its own state overtime law. The FLSA provides the only overtime requirements for employees in Arizona. *See* Industrial Commission of Arizona, *Wage Payment Laws: Frequently Asked Questions*, *available at* http://www.ica.state.az.us/faqs/labor/wage_payment_laws.html#.

**[7]** The district court concluded that the differences between California law and the laws of Colorado and Arizona are material, and we agree. We therefore proceed to the next step in the analysis.

### b. Interests of the Respective States

**[8]** California has a clear interest in the economic welfare of its own residents who perform work in California, both in ensuring that they have work and that such work is fairly compensated. California also has an interest in the effect compensation for nonresidents working in California will have on the compensation for California residents. The Labor Code provides:

> It is the policy of this state to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions or for employers that have not secured the payment of compensation, and to protect employers who comply with the law from those who attempt to gain a competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

Cal. Lab. Code § 90.5(a). *See also Lusardi Const. Co. v. Aubry*, 824 P.2d 643, 648 (Cal. 1992) (describing California's public policy interests in enforcing § 90.5(a) for *all* work performed within its boundaries). If a California employer may avoid the requirements of the state Labor Code by the simple expedient of hiring nonresidents, California residents will be substantially disadvantaged in the labor market by the cheaper labor that will thereby be made available to California employers.

**[9]** We next compare California's interest in applying its Labor Code to work performed by nonresidents in California with the interests of Colorado and Arizona in applying the terms of their minimum wage laws (or the absence thereof) to work performed by their residents in California. Colorado has expressed the same interests as California in the welfare of its workers. The Colorado minimum wage statute provides:

> The welfare of the State of Colorado demands that workers be protected from conditions of labor that have a pernicious effect on their health and morals. . . . The general assembly hereby finds and determines that issues related to the wages of workers in Colorado have important ramifications for the labor force in this state. The general assembly, therefore, declares that the minimum wages of workers in this state are a matter of statewide concern.

Colo. Rev. Stat. §§ 8-6-101(1) & (2). However, Colorado law provides no protection whatsoever to workers performing work outside Colorado. *Id.* § 1103.1(1) (providing that the Wage Order "regulates wages, hours, working conditions and procedures for certain employers and employees for work performed within the boundaries of the state of Colorado"). Thus, the interests expressed generally in Colorado's minimum wage statute are not significant here, where the only work at issue was performed in California.

However, Oracle argues that Colorado has a strong interest in the application of its overtime law (or lack thereof) to the Colorado plaintiffs in this case, contending that Colorado has expressed a general interest in the extraterritorial application of its wage laws. To support its argument, Oracle cites *Hathaway Lighting, Inc. v. Industrial Claim Appeals Office*, 143 P.3d 1187, 1190 (Colo. Ct. App. 2006), for the proposition that the Colorado Court of Appeals has affirmed the power of Colorado to control the terms of employment of Coloradans temporarily working outside Colorado because of "the state's interest in the welfare and protection of its citizens." However, that language in *Hathaway Lighting* indicated the court's approval of the interests motivating the Colorado Workers' Compensation Act, which has an explicit extraterritorial provision. *Id.* at 1189. *Hathaway Lighting* is of limited help in evaluating Colorado's interests in the extraterritorial application of overtime regulations that are explicitly limited in their application to work performed within Colorado's geographic boundaries.

[10] As indicated above, Arizona has no state law regulating overtime work. Protection is provided to Arizona workers by the FLSA, which operates uniformly, as federal law, throughout the country. Arizona has thus expressed no interest in the wages paid to its residents except such interest as is expressed in the FLSA.

[11] Nevertheless, we are willing to assume for the sake of argument that Colorado and Arizona do in fact have interests in the welfare of their residents when they work in other states, even if those states have never expressed this interest with respect to their overtime laws. However, we cannot discern how these interests would in any way conflict with the interest of California in applying its Labor Code to Colorado and Arizona residents performing work in California. To the degree that Colorado or Arizona would be interested in the economic welfare of its residents working in California, these states both have an interest in the application of California

rather than Colorado or Arizona law, for California's Labor Code is by any measure the most advantageous to the employee. We fail to see any interest Colorado or Arizona have in ensuring that their residents are paid less when working in California than California residents who perform the same work.

**[12]** We therefore conclude that California has a strong interest in applying its Labor Code to the work performed by Plaintiffs in California. By contrast, we conclude that Colorado and Arizona have no interest in applying their minimum wage laws (or lack thereof) to Plaintiffs' work in California.

### c.   Comparative Impairment of Interests

Because we find that neither Colorado nor Arizona has an interest in applying its minimum wage laws to Plaintiffs' employment in California, we do not reach the third step of the analysis under *Washington Mutual*.

### 2.   Constitutional Constraints

Oracle argues that California's Labor Code may not be applied to Plaintiffs' work in California without violating the Due Process Clause of the Fourteenth Amendment and the Dormant Commerce Clause. Neither argument has merit.

### a.   Due Process Clause

**[13]** We apply the same test under the Due Process Clause of the Fourteenth Amendment and the Full Faith and Credit Clause to determine whether a state's law may be applied in a particular case. "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985). It is a rare case

in which a state court is constitutionally forbidden to apply its own state's law. *Compare Phillips*, 472 U.S. 797 (holding that Kansas court may not apply Kansas prejudgment interest rules to all of the natural gas leases at issue in a class action involving royalties from 6,232 leases, of which only four were located in Kansas, and 14,477 royalty owners, of whom only 504 were Kansas residents) *with Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981) (holding that Minnesota court may apply Minnesota rule permitting "stacking" of motorcycle insurance policies because plaintiff now lived in Minnesota and her deceased spouse had worked in Minnesota, even though plaintiff had lived in Wisconsin at the time of the accident, and even though decedent had lived in Wisconsin, had taken out the insurance policies in Wisconsin, and had been killed in Wisconsin).

**[14]** The contacts creating California interests are clearly sufficient to permit the application of California's Labor Code in this case. The employer, Oracle, has its headquarters and principal place of business in California; the decision to classify Plaintiffs as teachers and to deny them overtime pay was made in California; and the work in question was performed in California.

### b.   Dormant Commerce Clause

**[15]** If a statute "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). California has chosen to apply its Labor Code equally to work performed in California, whether that work is performed by California residents or by out-of-state residents. There is no plausible Dormant Commerce Clause argument when California has chosen to treat out-of-state residents equally with its own.

### B.   § 17200/Labor Code Claim

[16] Section 17200 prohibits, *inter alia*, unlawful business practices. Plaintiffs' second claim alleges a violation of § 17200, with the predicate underlying violation of law the failure to pay overtime as required by the Labor Code. For the same reasons we have just concluded that the Labor Code applies to Plaintiffs' work in California, we conclude that § 17200 also applies.

### C.   § 17200/FLSA Claim

Only Plaintiffs Evich and Burkow bring the third claim. Plaintiff Sullivan was part of the settlement class for FLSA claim in *Sullivan I* and is therefore not a plaintiff in this third claim.

[17] The predicate underlying violation of law in the third claim is Oracle's failure to pay overtime everywhere in the United States, not merely in California. California's Labor Code is more protective than the FLSA. *See* 29 U.S.C. § 207(a)(1) (stating that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed"). It thus appears to us that any damages for work performed in California that Plaintiffs might be able to recover under their third claim for violations of the FLSA would be included in damages that they could recover for violations of the Labor Code under their second claim. If we are mistaken on this point, the district court on remand will be able to address Plaintiffs' § 17200/FLSA claim for work performed in California.

The only question we decide here is whether Plaintiffs have a valid claim under § 17200 for alleged violations of the FLSA outside of California. The district court concluded that

§ 17200 does not apply to any violations of the FLSA outside of California. We agree with the district court.

**[18]** In *Norwest Mortgage, Inc. v. Superior Court*, 85 Cal. Rptr. 2d 18 (Ct. App. 1999), the California Court of Appeal held that § 17200 does not have extraterritorial application. The court wrote:

> We ordinarily presume the Legislature did not intend the statutes of this state to have force or operation beyond the boundaries of the state. Accordingly, we do not construe a statute as regulating occurrences outside the state unless a contrary intention is clearly expressed or reasonably can be inferred from the language or purpose of the statute. . . . Plaintiffs do not cite any pertinent California authority construing [§ 17200] as applicable to claims of non-California residents injured by conduct occurring beyond California's borders.

*Id.* at 23 (internal citations omitted). Based on *Norwest Mortgage*, we conclude that § 17200 does not apply to the claims of nonresidents of California who allege violations of the FLSA outside California.

## Conclusion

We reverse the district court's grant of summary judgment on Plaintiffs' first two claims. We hold that California's Labor Code applies to work performed in California by nonresidents of California. We affirm the district court's grant of summary judgment on Plaintiffs' third claim. We hold that § 17200 does not apply to allegedly unlawful behavior occurring outside California causing injury to nonresidents of California.

REVERSED in part, AFFIRMED in part, and REMANDED for further proceedings. Costs to Plaintiffs-Appellants.